J. Toji Calabro (SBN 239950)
CALABRO | LAW OFFICE
Two Pershing Square
2300 Main Street, 9th Floor
Kansas City, Missouri 64108
Tel: (888) 585-1247
Email:  tojicalabro@calabro-law.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PETER FONG, individually and on behalf of all others similarly situated, and<br><br>SUT FONG, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. BANCORP, and<br><br>U.S. BANK NATIONAL ASSOCIATION,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR RECOVERY OF PROPERTY, DAMAGES AND RESTITUTION**<br><br>1. Strict Liability<br>2. Conversion<br>3. Trespass to Chattels<br>4. Negligence Per Se<br>5. Negligence<br>6. Promissory Estoppel<br>7. Intentional Infliction of Emotional Distress<br>8. Unjust Enrichment<br>9. Bus & Prof Code § 17200<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Peter Fong and Sut Fong (collectively, the "Fongs" or "Plaintiffs"), on behalf of themselves and all other similarly situated, complain and allege through undersigned counsel against Defendants U.S. Bancorp and U.S. Bank National Association as follows.

**INTRODUCTION**

1.    "Safe Deposit Boxes" are supposed to be safe. And in reliance on Defendants' representations that they provide "safe deposit boxes," Plaintiffs Peter and Sut Fong dutifully paid for a safe deposit box at a USB branch in Sacramento for decades to store and keep safe precious family heirlooms and other valuables that generations of their family painstakingly acquired over decades of hard work. But unbeknownst to them, USB embarked on a cost-cutting measure and sought to "consolidate" the number of bank branches that still hold "safe deposit boxes." Without warning to the Fongs (and countless others), US Bank "drilled" into the "safe deposit boxes" without the Fongs present, and left the items unsecured. When the Fongs were finally notified by the police of the Bank's actions, the Fongs raced to the Bank to find that their valuables were gone; the envelopes and pouches that once held the valuables, empty. The Fongs pressed USB for their property and for answers, and the Bank purportedly conducted an internal investigation. But then the Bank clammed up, and told the Fongs to seek relief in court.

2.    Because of Defendants' shameful conduct and refusal to return the Fongs' valuables, and the fact that Defendants engaged in the same conduct for countless of their other customers with "safe deposit boxes" at Defendants' California locations, the Fongs bring this suit to seek answers, to recover their and the putative class members' property, as well as restitution, damages, and other relief as set forth below.

**JURISDICTION**

3.    This Court has personal jurisdiction over Defendants because the Defendants have purposefully availed themselves of the benefits of doing business in the State of California as both Defendant U.S. Bancorp and Defendant U.S. Bank National Association regularly conduct business in California, including by maintaining retail banking locations throughout the State of California (including in this district) where they offer "safe deposit boxes" for a fee to consumers like Plaintiffs.

4.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1348 because no Defendant is a citizen of the same state as either of the Plaintiffs, and the Plaintiffs' damages exceed $75,000.

**PARTIES**

5.     Plaintiff Peter Fong is an individual residing in or around Sacramento, California, at the time this action commenced.

6.     Plaintiff Sut Fong is an individual residing in or around Reno, Nevada, at the time this action commenced. At all times relevant here, Sut Fong has had constant pain in his lower right leg that substantially limits his ability to walk and renders him a "Disabled Person" for the purposes of Civil Code § 1761.

7.     Upon information and belief, Defendant U.S. Bancorp is a Delaware corporation with its principal place of business in Minneapolis, Minnesota, that provides a full range of financial services, including depository services. According to the California Secretary of State's website, it is currently registered to do business in California.

8.     Upon information and belief, Defendant U.S. Bank National Association ("USBNA") is a national bank association, a wholly owned subsidiary of Defendant U.S. Bancorp, and is engaged in the general banking business. Upon information and belief, USBNA is not registered with California's Secretary of State, or registered to do business in California, but does business in concert with U.S. Bancorp, by operating U.S. Bank-branded bank locations in California. Upon information and belief, USBNA is a citizen of Ohio for the purposes of 28 U.S.C. §§ 1332 & 1348.

9.     Upon information and belief, "U.S. Bank" is a trade and/or fictitious name under which U.S. Bancorp and USBNA operate retail locations throughout the country, including in California.

10.     Plaintiffs do not know how or even if Defendants allocate roles and responsibilities between them and therefore cannot allege with precision which Defendants committed which acts. But because US. Bancorp is registered to do business in California and USBNA is not, and because USBNA is a wholly-owned subsidiary of U.S. Bancorp that purports to be U.S. Bancorp's domestic banking subsidiary, Plaintiffs are informed and believed that USBNA and U.S. Bancorp work in concert for all purposes relevant here, and Plaintiffs refer collectively to each of the Defendants as the "Bank," "USB,"  and/or "Defendants" throughout this Complaint.

**VENUE**

11.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district, and a substantial part of the property that is the subject of this action is situated in this district.

**FACTUAL ALLEGATIONS**

12.     For decades, USB has offered customers "safe deposit boxes" throughout California.

13.     As the name conveys, USB markets and represents to their customers that these boxes are a "safe" place to "deposit" valuables.

14.     USB employs various tropes to convince its customers that USB's "safe deposit boxes" are safe. For example, the safe deposit boxes are kept in the bank's vault, and USB maintains that two sets of keys must be used—one set the Bank keeps; ones set the customer keeps—to open the boxes. The two sets of keys reinforce to the customer the ostensible security of the boxes: the Bank cannot open the box without the customer, and even if the customer's key is stolen, the box still cannot be opened without the Bank verifying the identify of whoever presents the key for use.

15.     USB convinces its customers that the safe deposit boxes are safe because that is the very purpose of the service they offer: a safe place to deposit valuables.

16.     And because a safe place to deposit valuables is the very point of the service, USB knows or should have known that customers who pay for safe deposit boxes are paying for a safe place to store objects of substantial monetary and/or emotional value.

17.     USB also knows, based on the demographic information it collects from customers, which of them are senior citizens. And because safe deposit customers must be physically present in the bank to deposit items in the safe deposit box, USB also knows which of its customers have certain disabilities.

18.     Nevertheless, USB has been engaging in an unpublicized campaign to—as USB describes it—"consolidate" the number of USB branches that continue to offer "safe deposit boxes" to only a "limited number of branches."

19.     The word "consolidate" conveys that USB has been taking the safe deposit boxes that had been housed at several different branches and transferring them to the "limited number of branches" that would still hold safe deposit boxes. But this is not what USB did.

20.     USB did not transfer safe deposit boxes from one branch to another; but just eliminated the safe deposit boxes all together in the branches that stopped providing the safe deposit box service. USB did not contact all customers who have dutifully paid for their safe deposit boxes to inform them of this change. Rather, USB unilaterally removed the safe deposit boxes from the vaults, and then "drilled" into the boxes to access their contents without their customers' knowledge, let alone consent.

21.     Worse, because USB has "drilled" into the boxes, the boxes do not have the security that USB's customers were paying for, expected, and relied on USB to provide. As a result, items have been stolen and/or lost, and USB cannot and/or has refused to return them to their customers.

22.     This is egregious conduct for institutions that are designed to, and actively market themselves, as a safe place deposit valuables.  It is particularly appalling here because safe deposit boxes are specifically designed to house items that have significant monetary and/or emotional value and are often irreplaceable.

**PLAINTIFF SPECIFIC ALLEGATIONS**

23.     Plaintiffs Peter and Sut Fong are brothers and first generation U.S. citizens.

24.     The Fongs' ancestors immigrated to the United States, and California in particular, toward the beginning of the last century.  They worked on the railroads and the Golden Gate Bridge.

25.     The Fongs' grandparents moved into restaurant work; first by clearing dishes, and they eventually starting their own restaurant business. Through their hard work and grit, the restaurant enjoyed some success.

26.     But the Fongs' grandparents did not know how invest in stocks or other securities. Instead, they bought jewelry and other such tangible valuables as a way to save and invest their money.

27. The jewelry and other valuables the Fongs acquired over time were extremely valuable. Plaintiffs' grandparents taught them to be prudent, and to safeguard the valuables. They also told Plaintiffs to always keep cash in a safe deposit box in case of an emergency.

28. To safeguard these family treasures, the Fongs paid for a "safe deposit box" at a USB branch in Sacramento.  For decades, the Fongs dutifully paid the fees required to maintain the safe deposit box.

29. The Fongs maintained several items of substantial monetary and sentimental value in the "safe deposit box" including, among other valuables:

  a. $85,000 in $100 bills (excellent condition, all dated in 1980s & 1990s)

  b. $1,500 in $50 bills

  c. $600 in $20 bills

  d. A pouch full of American Eagle Gold Bullion Coins (14 individually wrapped)

  e. Two $1000 dollar bills from 1928 in excellent condition

  f. Two $500 dollar bill from 1928 very rare and in excellent condition

  g. Five $20 gold certificate 1922 in excellent condition

  h. Four 10oz Gold Bars

  i. One satchel of natural, excellent cut investment diamonds, 45 pieces

  j. Natural pearl necklace

  k. 18K gold engraved ring w/ large natural jade stone

  l. 14K gold diamond studded ring w/ 1.5K round diamond

  m. Four natural green translucent jade bangle bracelets

  n. 24K thick yellow gold bangle bracelet w/ natural jade stone

  o. Four 24K thick yellow gold necklace 2oz

  p. Four 24K thick yellow gold pendant 4oz

  q. Two 24K gold bracelet

  r. 24K gold bracelet w/ dragon carvings

  s. Pair of gold earrings with gold pendant

1       t.     Pair of gold earrings with jade pendant

2       u.     Two Chinese Fu Natural Jade Necklace w/ 24K gold chain

3       v.     Three 24K solid yellow gold necklace

4       w.     Men's Gold Rolex Watch

5       x.     Women's Gold Rolex Watch

6     30.    Nevertheless, USB "drilled" into the Fongs' "safe deposit box" without the Fongs'

7 knowledge or consent on or around (based on information and belief) November 17, 2021.

8     31.    Incredibly, the very same day (November 17), as reflected in this excerpt of the

9 bank statement USB sent to the Fongs, USB deducted $96.10 from the Fongs' bank account to pay

10 for another year of safe deposit box service:

11

12 **usbank.**

13

14

**Other Withdrawals**

| Date | Description of Transaction | | Ref Number | | Amount |
|---|---|---|---|---|---|
| Nov 17 | Electronic Withdrawal | To SAFE DEPOSIT BOX | | $ | 96.10- |
| | REF=213200079943150Y00 | 122235821ANNUAL FEE092638540020038 | | | |

15

16     32.    The Fongs learned of USB "drilling" into their "safe deposit box" only because a

17 law enforcement professional contacted the Fongs to tell them what happened. During the

18 conversation, the law enforcement professional told the Fongs that he saw many boxes that had

19 been drilled.

20     33.    Upon learning that USB had "drilled" their "safe deposit box," the Fongs rushed to

21 the Bank branch. When they arrived, there was no compliance with "dual controls." The box was

22 unlocked and was stashed in a side room—not the Bank vault.

23     34.    A Bank employee, believed to be Branch Manager Bobby Escalante, dumped the

24 contents of the "safe deposit box" onto the table. While some of the cash and certain jewelry were

25 there, hundreds of thousands of dollars' worth of cash, jewelry and other family heirlooms were

26 missing; envelopes and silk pouches that once housed the valuables, empty.

27     35.    The Fongs demanded their property but the Bank did not produce it.

28

36.     The Fongs demanded an explanation for where their missing valuables were but the Bank refused to provide one and instead tried to trick the Fongs into executing an inventory document stating that nothing was missing.

37.     The Fongs were devastated. Precious family heirlooms acquired over generations of hard work and sacrifice were gone.

38.     The Fongs escalated their concerns within USB, including by discussions with District Manager Gurpreet Sanghera. USB purportedly conducted an internal investigation into the matter, purportedly including a review of internal security camera footage, but later refused to disclose any specifics, or even permit the Fongs to review the security camera footage.

39.     The Fongs sought the assistance of the Sacramento Police Department, the FBI, and the Comptroller of the Currency, but they would not intervene.

40.     The Fongs sought the assistance of the Consumer Finance Protection Bureau ("CFPB"). USB provided a written response to that inquiry but again provided no specifics. USB simply denied summarily any fault, claimed that "[a]s a federally regulated national bank, our policies and procedures are stringently reviewed and monitored for compliance," and directed the Fongs to seek relief in Court if they wanted to pursue the matter.

## CLASS ACTION ALLEGATIONS

41.     Plaintiffs, proceeding as representatives, brings claims on behalf of the following proposed class:

> All persons (including individuals and legal entities) who, for a fee, deposited property in a USB safe deposit box in the State of California, such safety deposit box was drilled by USB, and any of the property deposited in the safe deposit box was not returned to the depositor.

### *Numerosity*

42.     The exact number of class members is not known to Plaintiffs without discovery. However, on information and belief, Plaintiffs believe the class consists of hundreds of putative class members. The members of the class are so numerous that joinder of individual members is impracticable and inadvisable, particularly in light of the number of questions of law and fact that are common to all class members.

*Commonality*

43.     There are common questions of law and fact in the action that relate to and affect the rights of each member of the class, including but not limited to:

      a.     Whether USB had a policy or practice and/or failed to follow any policy or practice of notifying its customers of its intent to "drill" into customer "safe deposit boxes" as USB was "consolidating" the number of branches that continued to offer "safe deposit boxes" to customers in California;

      b.     Whether USB had a policy or practice of "drilling" into customer "safe deposit boxes" without consent;

      c.     Whether such drilling was unlawful;

      d.     Whether USB had a policy or practice of refusing to return customers' items once USB had "drilled" into the customers' "safe deposit boxes";

      e.     Whether USB failed to return items that class members deposited into USB's "safe deposit boxes";

      f.     Whether USB had policy or practice of stealing and/or losing the items customers deposited, or a policy or practice that allowed such items to be stolen or lost;

      g.     Whether USB is strictly liable for failing to return items after "drilling" into the customers' safe deposit boxes without consent;

      h.     Whether USB is liable for conversion for failing to return items after "drilling" into the customers' safe deposit boxes without consent;

      i.     Whether USB is liable for trespass to chattels for failing to return items after "drilling" into the customers' safe deposit boxes without consent;

      j.     Whether USB was negligent for failing to return items after "drilling" into the customers' safe deposit boxes without consent;

      k.     Whether the class members may recover from USB under a theory of promissory estoppel for USB failing to return items after "drilling" into the customers' safe deposit boxes without consent;

l.      Whether USB is liable for intentional infliction of emotional distress for failing to return items after "drilling" into the customers' safe deposit boxes without consent;

m.     Whether USB unjustly enriched itself; and

n.     Whether USB engaged in unfair business practices under California Business and Professions Code § 17200 *et seq*.

44.     Because Defendants claim they had uniform policies and procedures that are "stringently reviewed and internally monitored" concerning how USB handles the "safe deposit boxes" and the property its customers deposit into the safe deposit boxes, the answers to the questions noted above will be common to all class members, and individual issues are unlikely to predominate over these common questions.

*Typicality*

45.     The claims of Plaintiffs, who are the representatives of the class identified above, are typical of the claims of the class members. Plaintiffs and all other similarly situated customers sustained injuries and damages arising out of and caused by Defendants' policies, practices, and common course of conduct, which subjected Plaintiffs and the class members to the same violations set forth above and below.

46.      For example, Plaintiffs—like other members of the class—paid a fee to deposit property in a "safe deposit box" but, unbeknownst to them, USB "drilled" into the box without Plaintiffs' consent, failed to secure the valuable property Plaintiffs had deposited in the safe deposit box, and USB then failed to deliver all of Plaintiffs' property back to them.

*Adequacy*

47.     The named Plaintiffs understand their obligations as fiduciaries to the class members,  and they are able to and will fairly and adequately protect the interests of the Classes.

48.     There is no conflict between the named Plaintiffs and other class members with respect to the claims asserted or the relief requested in this case.

49.     Plaintiffs' counsel is experienced and capable in the field of complex commercial litigation and class actions, and will actively conduct and be responsible for this case.

***Superiority of Class Action***

50.     Certification of the Classes is appropriate under applicable law. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, and will create a substantial benefit to both the public and the courts in that:

       a.      The cost of prosecuting the class members' claims individually will vastly exceed the costs for prosecuting the case as a class action, and it is unlikely that all members of the class would have the resources to prosecute their claims individually;

       b.      Even if each class member could afford to bring suit individually, many (if not most) class members would likely not even know that USB has engaged in the unlawful conduct alleged in this Complaint and that they are entitled to the rights and protections California law affords;

       c.      Class certification will obviate the necessity of a multiplicity of claims which would tax the resources of the litigants and the courts throughout the state; and

       d.      Deciding the common questions of fact and law in a single proceeding will reduce the likelihood of inconsistent rulings, opinions, and decisions and provide clarity to members of the class and Defendants.

51.     Notice to the proposed class members will be accomplished through discovery by obtaining Defendants' records. Once the identity of other class members is determined, potential class members may easily and quickly be notified of the pendency of this action by U.S. mail, email, or other means.

**CAUSES OF ACTION**

**COUNT I**

**Strict Liability**

*(By Plaintiffs individually, and on behalf of the class members, against each Defendant)*

52.     Plaintiffs re-allege the allegations set forth above.

53.     Plaintiffs, and the putative class members, owned personal property that they placed in USB "safe deposit boxes" in California.

54.     USB charged Plaintiffs and the class members a fee for maintaining the property in "safe deposit boxes."

55.     USB knew, or reasonably should have known, that by offering Plaintiffs and the class members "safe deposit boxes" for a fee, that Plaintiffs and the class members would deposit precious and often irreplaceable items of immense economic and emotional value; the loss of which would cause significant and profound economic and emotional distress.

56.     USB is strictly liable for returning Plaintiffs' and the class members' property: USB has an absolute duty to return the deposited valuables to Plaintiffs and the class members, regardless of care or good faith.

57.     USB did not deliver Plaintiffs' and the class members property.

58.     None of Plaintiffs or the class members consented to USB's interference with Plaintiffs' and the class members' property.

59.     Plaintiffs and the class members have been harmed in an amount to be established at trial, and such harm includes but is not limited to the loss of the possession, use and value of their property; USB's unauthorized possession, use and/or sale of the property; emotional distress; and the expenditure of time and resources to locate and recover their property.

60.     USB's conduct was a substantial factor in causing Plaintiffs' and the class members' harm.

61.     USB acted with oppression, fraud, and/or malice because USB knew and intended that their conduct would cause injury to Plaintiffs and the class members, USB's conduct was despicable and carried on with a willful and conscious disregard of the rights or safety of others,

USB's despicable conduct subjected Plaintiffs and the class members to a cruel and unjust hardship in conscious disregard of Plaintiffs' and the class members' rights, and/or USB acted with deceit or concealment of material facts known to USB with the intention of depriving Plaintiffs and the class members of their property, legal rights or otherwise causing injury.

62.     Indeed, USB's refusal to inform the Fongs and the class members of what happened to their valuables results in the presumption as a matter of law that USB willfully, or by gross negligence, permitted the loss or injury to occur.

63.     USB knew or should have known that USB's conduct was directed to one or more senior citizens or disabled persons.

64.     USB's conduct caused one or more senior citizens or disabled persons to suffer: loss or encumbrance of a source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person.

65.     One or more senior citizens or disabled persons are substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct.

66.     Plaintiffs, individually and on behalf of the class members, request all relief permitted by law.

**COUNT II**

**Conversion**

*(By Plaintiffs individually, and on behalf of the class members, against each Defendant)*

67.     Plaintiffs re-allege the allegations set forth above.

68.     Plaintiffs, and the putative class members, owned personal property that they placed in USB "safe deposit boxes" in California.

69.     USB charged Plaintiffs and the class members a fee for maintaining the property in "safe deposit boxes."

70.     USB knew, or reasonably should have known, that by offering Plaintiffs and the class members "safe deposit boxes" for a fee, that Plaintiffs and the class members would deposit precious and often irreplaceable items of immense economic and emotional value; the loss of which would cause significant and profound economic and emotional distress.

71.     USB substantially interfered with Plaintiffs' and class members' property by knowingly or intentionally taking possession of the property, preventing Plaintiffs and the class members from having access to the property they entrusted into USB safe deposit boxes, destroying the property, and/or refusing to return the property to Plaintiffs and the putative class members.

72.     None of Plaintiffs or the class members consented to USB's interference with Plaintiffs' and the class members' property.

73.     Plaintiffs and the class members have been harmed in an amount to be established at trial, and such harm includes but is not limited to the loss of the possession, use and value of their property; USB's unauthorized possession, use and/or sale of the property; emotional distress; and the expenditure of time and resources to locate and recover their property.

74.     USB's conduct was a substantial factor in causing Plaintiffs' and the class members' harm.

75.     USB acted with oppression, fraud, and/or malice because USB knew and intended that their conduct would cause injury to Plaintiffs and the class members, USB's conduct was despicable and carried on with a willful and conscious disregard of the rights or safety of others, USB's despicable conduct subjected Plaintiffs and the class members to a cruel and unjust hardship in conscious disregard of Plaintiffs' and the class members' rights, and/or USB acted with deceit or concealment of material facts known to USB with the intention of depriving Plaintiffs and the class members of their property, legal rights or otherwise causing injury.

76.     Indeed, USB's refusal to inform the Fongs and the class members of what happened to their valuables results in the presumption as a matter of law that USB willfully, or by gross negligence, permitted the loss or injury to occur.

77.     USB knew or should have known that USB's conduct was directed to one or more senior citizens or disabled persons.

78.     USB's conduct caused one or more senior citizens or disabled persons to suffer: loss or encumbrance of a source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person.

79.     One or more senior citizens or disabled persons are substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct.

80.     Plaintiffs, individually and on behalf of the class members, request all relief permitted by law.

### COUNT III

### Trespass to Chattels

*(By Plaintiffs individually, and on behalf of the class members, against each Defendant)*

81.     Plaintiffs re-allege the allegations set forth above.

82.     USB interfered with Plaintiffs' and class members' property by knowingly or intentionally taking possession of the property, preventing Plaintiffs and the class members from having access to the property they entrusted into USB safe deposit boxes, destroying the property, and/or refusing to return the property to Plaintiffs and the putative class members.

83.     None of Plaintiffs or the class members consented to USB's interference with Plaintiffs' and the class members' property.

84.     Plaintiffs and the class members have been harmed in an amount to be established at trial, and such harm includes but is not limited to the loss of the possession, use and value of their property; USB's unauthorized possession, use and/or sale of the property; emotional distress; and the expenditure of time and resources to locate and recover their property.

85.     USB's conduct was a substantial factor in causing Plaintiffs' and the class members' harm.

86.     USB acted with oppression, fraud, and/or malice because USB knew and intended that their conduct would cause injury to Plaintiffs and the class members, USB's conduct was despicable and carried on with a willful and conscious disregard of the rights or safety of others, USB's despicable conduct subjected Plaintiffs and the class members to a cruel and unjust hardship in conscious disregard of Plaintiffs' and the class members' rights, and/or USB acted with deceit or concealment of material facts known to USB with the intention of depriving Plaintiffs and the class members of their property, legal rights or otherwise causing injury.

87.     Indeed, USB's refusal to inform the Fongs and the class members of what happened to their valuables results in the presumption as a matter of law that USB willfully, or by gross negligence, permitted the loss or injury to occur.

88.     USB knew or should have known that USB's conduct was directed to one or more senior citizens or disabled persons.

89.     USB's conduct caused one or more senior citizens or disabled persons to suffer: loss or encumbrance of a source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person.

90.     One or more senior citizens or disabled persons are substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct.

91.     Plaintiffs, individually and on behalf of the class members, request all relief permitted by law.

# COUNT IV

## Negligence Per Se

*(By Plaintiffs individually, and on behalf of the class members, against each Defendant)*

92.     Plaintiffs re-allege the allegations set forth above.

93.     Civil Code § 1835 provides that a depositary may not use the thing deposited, or permit it to be used, for any purpose, without the consent of the depositor," and that "[h]e may not, if it is purposely fastened by the depositor, open it without the consent of the latter, except in case of necessity."

94.     Civil Code § 1836 provides that a "depositary is liable for any damage happening to the thing deposited, during his wrongful use thereof, unless such damage must inevitably have happened though the property had not been thus used."

95.     USB violated § 1835 by drilling into Plaintiffs' and the class members' "safe deposit boxes" without consent.

96.     USB also violated § 1835 by stealing and/or misplacing, or allowing to be stolen and/or misplaced, the items Plaintiffs and the class members deposited in the safe deposit boxes.

97.     USB's violation of § 1835 was a substantial factor in bringing about Plaintiffs' and the class members' harm.

98.     Plaintiffs and the class members have been harmed in an amount to be established at trial, and such harm includes but is not limited to the loss of the possession, use and value of their property; USB's unauthorized possession, use and/or sale of the property; emotional distress; and the expenditure of time and resources to locate and recover their property.

99.     USB acted with oppression, fraud, and/or malice because USB knew and intended that their conduct would cause injury to Plaintiffs and the class members, USB's conduct was despicable and carried on with a willful and conscious disregard of the rights or safety of others, USB's despicable conduct subjected Plaintiffs and the class members to a cruel and unjust hardship in conscious disregard of Plaintiffs' and the class members' rights, and/or USB acted with deceit or concealment of material facts known to USB with the intention of depriving Plaintiffs and the class members of their property, legal rights or otherwise causing injury.

100.    Indeed, USB's refusal to inform the Fongs and the class members of what happened to their valuables results in the presumption as a matter of law that USB willfully, or by gross negligence, permitted the loss or injury to occur.

101.    USB knew or should have known that USB's conduct was directed to one or more senior citizens or disabled persons.

102.    USB's conduct caused one or more senior citizens or disabled persons to suffer: loss or encumbrance of a source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person.

103.    One or more senior citizens or disabled persons are substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct.

104.    Plaintiffs, individually and on behalf of the class members, request all relief permitted by law.

### COUNT V

### Negligence

*(By Plaintiffs individually, and on behalf of the class members, against each Defendant)*

105.    Plaintiffs re-allege the allegations set forth above.

106.    USB has—and at all times relevant here, had—a legal duty to use due care.

107.    USB breached its duty of care by drilling into Plaintiffs' and the class members' "safe deposit boxes" without consent and stealing and/or misplacing, or allowing to be stolen and/or misplaced, the items Plaintiffs and the class members deposited in the safe deposit boxes.

108.    Plaintiffs and the class members have been harmed in an amount to be established at trial, and such harm includes but is not limited to the loss of the possession, use and value of their property; USB's unauthorized possession, use and/or sale of the property; emotional distress; and the expenditure of time and resources to locate and recover their property.

109.    USB's conduct was a substantial factor in causing Plaintiffs' and the class members' harm.

110.    USB acted with oppression, fraud, and/or malice because USB knew and intended that their conduct would cause injury to Plaintiffs and the class members, USB's conduct was despicable and carried on with a willful and conscious disregard of the rights or safety of others, USB's despicable conduct subjected Plaintiffs and the class members to a cruel and unjust hardship in conscious disregard of Plaintiffs' and the class members' rights, and/or USB acted with deceit or concealment of material facts known to USB with the intention of depriving Plaintiffs and the class members of their property, legal rights or otherwise causing injury.

111.    Indeed, USB's refusal to inform the Fongs and the class members of what happened to their valuables results in the presumption as a matter of law that USB willfully, or by gross negligence, permitted the loss or injury to occur.

112.    USB knew or should have known that USB's conduct was directed to one or more senior citizens or disabled persons.

113.    USB's conduct caused one or more senior citizens or disabled persons to suffer: loss or encumbrance of a source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person.

114.    One or more senior citizens or disabled persons are substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct.

115.    Plaintiffs, individually and on behalf of the class members, request all relief permitted by law.

**COUNT VI**

**Promissory Estoppel**

*(By Plaintiffs individually, and on behalf of the class members, against each Defendant)*

116.    Plaintiffs re-allege the allegations set forth above.

117.    USB, by language or conduct, promised to Plaintiffs and the class members, that USB would keep "safe" the valuables Plaintiffs and the class members deposited into the "safe deposit boxes" USB maintained.

118.    USB knew, or reasonably should have known, that Plaintiffs and the class members would rely on USB's promise to keep their valuables safe in a "safe deposit box."

119.    Plaintiffs and the class members did in fact rely on USB's promise when they placed valuables in USB's "safe deposit boxes." Plaintiffs and the class members would not have placed their valuables in USB's "safe deposit boxes" without USB's promise to keep the items safe.

120.    USB harmed Plaintiffs and the class members by reneging on the promise: USB did not keep the items "safe," but "drilled" into the boxes without consent and failed to secure their contents.

121.    USB also reneged on the promise by stealing and/or misplacing, or allowing to be stolen and/or misplaced, the items Plaintiffs and the class members deposited in the safe deposit boxes.

122.    Plaintiffs and the class members have been harmed in an amount to be established at trial, and such harm includes but is not limited to the loss of the possession, use and value of their property; USB's unauthorized possession, use and/or sale of the property; emotional distress; and the expenditure of time and resources to locate and recover their property.

123.    Injustice can be avoided only by holding USB liable for reneging on its promise.

124.    USB's conduct was a substantial factor in causing Plaintiffs' and the class members' harm.

125.    USB acted with oppression, fraud, and/or malice because USB knew and intended that their conduct would cause injury to Plaintiffs and the class members, USB's conduct was

despicable and carried on with a willful and conscious disregard of the rights or safety of others, USB's despicable conduct subjected Plaintiffs and the class members to a cruel and unjust hardship in conscious disregard of Plaintiffs' and the class members' rights, and/or USB acted with deceit or concealment of material facts known to USB with the intention of depriving Plaintiffs and the class members of their property, legal rights or otherwise causing injury.

126.    Indeed, USB's refusal to inform the Fongs and the class members of what happened to their valuables results in the presumption as a matter of law that USB willfully, or by gross negligence, permitted the loss or injury to occur.

127.    USB knew or should have known that USB's conduct was directed to one or more senior citizens or disabled persons.

128.    USB's conduct caused one or more senior citizens or disabled persons to suffer: loss or encumbrance of a source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person.

129.    One or more senior citizens or disabled persons are substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct.

130.    Plaintiffs, individually and on behalf of the class members, request all relief permitted by law.

**COUNT VII**

**Intentional Infliction of Emotional Distress**

*(By Plaintiffs individually, and on behalf of the class members, against each Defendant)*

131.    Plaintiffs re-allege the allegations set forth above.

132.    USB's conduct in drilling into Plaintiffs' and the class members' "safe deposit boxes without consent, and then proceeding to steal and/or lose the valuables that were inside, and/or allowing those items to be stolen and/or misplaced, was outrageous.

133.    Because USB knew that Plaintiffs and the class members took out safe deposit boxes for the purposes of depositing items with significant monetary and/or emotional value, USB acted with reckless disregard of the probability that Plaintiffs and the class members would suffer emotional distress.

134.    Plaintiffs and the class members have suffered severe emotional distress.

135.    USB's conduct was a substantial factor in causing Plaintiffs' and the class members' harm.

136.    USB acted with oppression, fraud, and/or malice because USB knew and intended that their conduct would cause injury to Plaintiffs and the class members, USB's conduct was despicable and carried on with a willful and conscious disregard of the rights or safety of others, USB's despicable conduct subjected Plaintiffs and the class members to a cruel and unjust hardship in conscious disregard of Plaintiffs' and the class members' rights, and/or USB acted with deceit or concealment of material facts known to USB with the intention of depriving Plaintiffs and the class members of their property, legal rights or otherwise causing injury.

137.    Indeed, USB's refusal to inform the Fongs and the class members of what happened to their valuables results in the presumption as a matter of law that USB willfully, or by gross negligence, permitted the loss or injury to occur.

138.    USB knew or should have known that USB's conduct was directed to one or more senior citizens or disabled persons.

139.    USB's conduct caused one or more senior citizens or disabled persons to suffer: loss or encumbrance of a source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or a government benefits program, or assets essential to the health or welfare of the senior citizen or disabled person.

140.    One or more senior citizens or disabled persons are substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct.

141.    Plaintiffs, individually and on behalf of the class members, request all relief permitted by law.

## COUNT VIII

### Unjust Enrichment

*(By Plaintiffs individually, and on behalf of the class members, against each Defendant)*

142.    Plaintiffs re-allege the allegations set forth above.

143.    Plaintiffs and the class members conferred a benefit on USB by paying for safe deposit boxes.

144.    USB also received a benefit to the extent USB possessed, sold, appropriated, and/or used without consent.

145.    The benefits USB received were at the expense of Plaintiffs and the class members.

146.    It is unjust for USB to retain these benefits.

147.    Plaintiffs, individually and on behalf of the class members, request all relief permitted by law.

## COUNT IX

### Unfair Business Practices

(Cal. Bus. & Prof. Code § 17200, *et seq.*)

*(By Plaintiffs individually, and on behalf of the class members, against each Defendant)*

148.    Plaintiffs re-allege the allegations set forth above.

149.    California's Business and Professions Code § 17200, *et seq.* prohibits acts of unfair competition, which includes any "unlawful business act or practice."

150.    The policies, acts, and practices described in this Complaint were and are an unlawful business act or practice because they violated numerous laws as provided above. Plaintiffs and the class members reserve the right to allege additional statutory and common law violations by Defendants.

151.    These practices were and are unfair and resulted in injury to Plaintiffs, and the class members, as set forth above.

152.   The policies acts and practices described in this Complaint were and are an unlawful business act or practice because any justification for Defendants' unlawful and wrongful conduct were and are vastly outweighed by the harm such conduct caused Plaintiffs, the class members, Defendants' competitors, and the members of the general public.

153.   As a direct and proximate result of Defendants' unfair business practices, Defendants have reaped unfair benefits and illegal profits to which they are not rightfully entitled, and that rightfully belong to Plaintiffs and the class members. Defendants have also enjoyed an unfair competitive advantage by retaining money that is due their employees pursuant to state law, all at the expense of Plaintiffs and the class members.

154.   Defendants' unlawful business practices are likely to continue.

155.   Plaintiffs are entitled to seek preliminary and permanent injunctive relief, including but not limited to orders that Defendants:

   a.   Immediately cease "drilling" into "safe deposit box" without the consent of the depositors;

   b.   Account for and restore to Plaintiffs and the class members the property they deposited, and the value of such property withheld from them;

   c.   Identify, locate, and make restitution to Plaintiffs, the class members, and the general public all funds and the value of all things acquired by the acts of unfair competition alleged herein;

   d.   Disgorge all illegally obtained monies from Defendants' violation of California Business and Professions Code § 17200, *et seq*.,; and

   e.   All additional orders necessary under California Business and Professions Code § 17203.

156.   Plaintiffs, individually and on behalf of the class members, request all relief permitted by law.

1

**PRAYER FOR RELIEF**

2

**WHEREFORE,** Plaintiffs respectfully pray that this Court:

3

      a.     Determine that this action may be maintained as a class action;

4

      b.     Appoint Plaintiffs as Class Representatives;

5

      c.     Appoint Plaintiffs' counsel as Class Counsel;

6

      d.     Enter judgment for Plaintiffs individually and for the class members as to

7

               the violations alleged herein;

8

      e.     Award general and compensatory damages in an amount to be determined

9

               at trial;

10

      f.     Issue a permanent injunction pursuant to Business and Professions Code

11

               § 17203 restraining and enjoining Defendants from continuing the unfair

12

               practices set forth above;

13

      g.     Award restitution under Business and Professions Code § 17203;

14

      h.     Award exemplary and treble damages under Civil Code §§ 3294 & 3345;

15

      i.     Award pre-judgment interest;

16

      j.     Award reasonable attorney's fees and costs; and

17

      k.     Grant any further relief that the Court may deem just and equitable.

18

**DEMAND FOR JURY TRIAL**

19

     157.    Plaintiffs individually, and on behalf of the class members, demand a jury trial as

20

to all such issues and actions that are triable to a jury.

21

22

                                    Respectfully submitted,

23

Dated: July 21, 2022                CALABRO | LAW OFFICE

24

25

                       By:            */s/ J. Toji Calabro*

26

                                 J. Toji Calabro
                             Attorney for Plaintiffs

27

28

COMPLAINT