UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER FONG, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>U.S. BANCORP, et al.,<br><br>　　　　　Defendants. | No. 2:22-cv-01291-DC-CSK<br><br>ORDER DENYING DEFENDANTS' RENEWED MOTION TO COMPEL ARBITRATION AND DENYING PLAINTIFFS' MOTION TO STRIKE AS MOOT<br><br>(Doc. Nos. 39, 40) |

    This matter came before the court on February 21, 2025 for a hearing on Defendants' renewed motion to compel arbitration and Plaintiffs' motion to strike. (Doc. Nos. 39, 40.) Attorney J. Toji Calabro appeared on behalf of Plaintiffs. Attorneys Michael Krauss and Karin Bohmholdt appeared on behalf of Defendants. For the reasons explained below, the court will deny Defendants' renewed motion to compel arbitration and deny Plaintiffs' motion to strike as having been rendered moot.

## BACKGROUND

    On April 21, 2000, Plaintiffs Peter Fong and Sut Fong (collectively, "Plaintiffs") opened a safe deposit box at one of the Sacramento branches of Defendants U.S. Bancorp and U.S. Bank National Association ("U.S. Bank"), which is a wholly-owned subsidiary of U.S. Bancorp. (Doc. Nos. 1 at 2, 6; 17 at 2; 39-2 at 2.) For over two decades, Plaintiffs stored a substantial amount of

1   cash, gold, and jewelry in their safe deposit box. (Doc. No. 1 at 6.) Plaintiffs allege that on or
2   around November 17, 2021, Defendants "drilled" into their safe deposit box to access its contents
3   without Plaintiffs' knowledge or consent. (*Id.* at 5–7.) Upon learning this information, Plaintiffs
4   rushed to the bank and found their safe deposit box unlocked and stored outside of the bank vault.
5   (*Id.* at 7.) Plaintiffs allege "hundreds of thousands of dollars' worth of cash, jewelry, and other
6   family heirlooms were missing" from their safe deposit box. (*Id.*)

7         On July 21, 2022, Plaintiffs filed a class action complaint against Defendants asserting
8   claims for strict liability, conversion, trespass to chattels, negligence per se, negligence,
9   promissory estoppel, intentional infliction of emotional distress, unjust enrichment, and unfair
10  business practices under California's Unfair Competition Law, California Business & Professions
11  Code §§ 17200, *et seq*. (Doc. No. 1 at 12–24.) Plaintiffs seek to recover property, damages, and
12  restitution. (*Id.*)

13        On September 14, 2022, Defendants filed a motion to compel arbitration of Plaintiffs'
14  individual claims and to dismiss this action or alternatively stay proceedings pending completion
15  of arbitration. (Doc. No. 10.) According to the exhibits Defendants attached to that motion, on
16  November 19, 2013, Plaintiffs signed a one-page "Consumer Safe Deposit Box Contract," which
17  states "Renter(s) agrees to the terms of the 'Safe Deposit Box Lease Agreement,' . . . ." (Doc. No.
18  10-4 at 2.) The Safe Deposit Box Lease Agreement, which contains an arbitration provision, is set
19  forth on page 19 and 20 in a lengthy document entitled "Your Deposit Account Agreement."
20  (Doc. No. 10-3 at 21–22.) In their motion, Defendants argued the Safe Deposit Box Lease
21  Agreement with its arbitration provision was properly incorporated by reference into the
22  Consumer Safe Deposit Box Contract under California law, which requires a reference to be
23  "clear and unequivocal," "called to the attention of the other party and he must consent thereto,"
24  and "the terms of the incorporated document must be known or easily available to the contracting
25  parties." (Doc. No. 10 at 13) (citing *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54, 67
26  (1997)).

27        In their opposition to that motion, Plaintiffs argued the Safe Deposit Box Lease
28  Agreement's arbitration clause was not incorporated by reference into the Consumer Safe Deposit

Box Contract they signed in November 2013. (Doc. No. 15 at 10–20.) Plaintiffs explained that, after being informed by Defendants that the bank's key for the slot where their safe deposit box was located was damaged in 2013, they visited the bank to move their safe deposit box to a different slot, were provided new keys, and signed the Consumer Safe Deposit Box Contract to indicate they had received the new keys. (*Id.* at 7–8; *see also* Doc. No. 17 at 3–4.) Plaintiffs argued that the purported incorporation of the Safe Deposit Box Lease Agreement in the one-page Consumer Safe Deposit Box Contract they signed was not "clear and unequivocal" and they did not consent to the arbitration clause within the Safe Deposit Box Lease Agreement. (*Id.* at 12–14, 18–19.) Plaintiffs also asserted the Safe Deposit Box Lease Agreement was not easily available to them because they did not receive of a copy it. (*Id.* at 19–20.) Plaintiffs further argued that Defendants waived their right to compel arbitration by directing Plaintiffs to litigate their case in court. (*Id.* at 20–22.) Lastly, Plaintiff argued the arbitration provision within the Safe Deposit Box Lease Agreement could not be enforced as to Defendant U.S. Bancorp, who was not a party to the contract. (*Id.* at 22–24.)

On August 17, 2023, the court issued an order granting Defendants' motion to compel arbitration and dismissed this case because the court found the Safe Deposit Box Lease Agreement was properly incorporated by reference into the Consumer Safe Deposit Box Contract under California law.[1] (Doc. No. 24 at 11–13, 16.) In addition, the court rejected Plaintiffs' argument that Defendants waived their right to compel arbitration because the court concluded Defendants did not act inconsistently with their right to invoke arbitration. (*Id.* at 14.) The court also found that the arbitration agreement was enforceable as to both Defendants because Plaintiffs' claims against the subsidiary and its parent company were based on the same facts and inherently inseparable. (*Id.* at 15.)

Plaintiffs appealed the court's August 17, 2023 order to the United States Court of Appeals for the Ninth Circuit. (*See* Doc. No. 26.) In a memorandum disposition, the Ninth Circuit

---

[1] The court's August 17, 2023 order predated the United States Supreme Court's decision in *Smith v. Spizzirri*, 601 U.S. 472, 478–79 (2024), which held that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, [Section] 3 of the FAA compels the court to stay the proceeding."

held Defendants failed to establish the Safe Deposit Box Lease Agreement was incorporated by reference into the Consumer Safe Deposit Box Contract that Plaintiffs signed in 2013 when they moved their safe deposit box to a new slot. (Doc. No. 34 at 5.) The Ninth Circuit panel also explained several reasons for its conclusion that Defendants failed to show the Safe Deposit Box Lease Agreement was "called to the attention of" or "easily available" to Plaintiffs when they signed the Consumer Safe Deposit Box Contract. (*Id.*) First, "it would not have been clear to a reasonable consumer under the circumstances" that the Consumer Safe Deposit Box Contract "represented a new agreement." (*Id.*) Notably, Plaintiffs went to the branch in November 2013 to move their safe deposit box to a new slot, not to open a new account or get a new safe deposit box. (*Id.*) Thus, the Ninth Circuit reasoned, "[s]o far as the [Plaintiffs] were concerned, they were signing paperwork, at the branch's request, to get a new slot for their existing box." (*Id.*) Further, Plaintiffs could reasonably have thought the reference to the Safe Deposit Box Lease Agreement referred to the agreement they entered into when they opened their account in 2000. (*Id.*) Moreover, Defendants did not explain why Plaintiffs should have understood the one-page Consumer Safe Deposit Box Contract "represented an entirely new agreement that incorporated a separate document [they] had never seen." (*Id.* at 5–6.)

Second, the Ninth Circuit determined there was a "genuine dispute of material fact as to whether the branch provided the Safe Deposit Box Lease Agreement to [Plaintiffs]." (*Id.* at 6.) The Ninth Circuit emphasized that both Plaintiffs "signed sworn declarations stating that when they came to the branch they were given no documents other than the one-page [Consumer] Safe Deposit Box Contract." (*Id.* at 6–7.) Defendants' employee who assisted Plaintiffs during their 2013 visit had no recollection of their encounter. (*Id.* at 6.) The Ninth Circuit further reasoned that "[b]ecause it would have been reasonable for [Plaintiffs] to understand that the one-page form referred to the parties' prior agreement, there was no reason for [Plaintiffs] to request the separate document referenced in the form." (*Id.* at 7.) Ultimately, the Ninth Circuit vacated the August 17, 2023 order compelling arbitration (Doc. No. 24) and remanded to this court "for

/////

/////

4

1    /////

2    further proceedings consistent with [its] disposition."[2] (Doc. No. 34 at 7.) Following the Ninth

3    Circuit's decision, Defendants filed a Petition for Panel Rehearing and Rehearing En Banc, both

4    of which were denied.

5          On remand, the court directed the parties to file a joint status report regarding their

6    proposals for how this case should proceed on remand. (Doc. No. 35.) On November 12, 2024,

7    the parties filed their joint status report. (Doc. No. 37.) Therein, Defendants expressed their

8    intention to file a renewed motion to compel arbitration "to address the new issues raised by the

9    Ninth Circuit on appeal and to present further evidence to address those issues." (*Id.* at 10.) In

10   Defendants' view, the Ninth Circuit based its decision on issues Plaintiffs had not argued,

11   specifically "that the [Plaintiffs] might have understood that the contract they signed in 2013

12   might have incorporated or referred to a prior controlling contract . . . ." (*Id.* at 13.) Defendants

13   stated they have "new evidence" to show that even if Plaintiffs reasonably believed in 2013 that

14   an earlier document controlled, they "executed [a] new contract" in 2012 which likewise

15   incorporated by reference the Safe Deposit Box Lease Agreement that contained the arbitration

16   provision. (*Id.*) In response to Defendants' view, Plaintiffs expressed their opposition to the filing

17   of a renewed motion to compel arbitration, arguing such a motion would be based on evidence

18   Defendants have had in their possession for years, and the Ninth Circuit's decision forecloses

19   Defendants' incorporation by reference arguments. (*Id.* at 3–4, 6–7.)

20         Without waiting for the court to consider the parties' respective proposals and issue an

21   order regarding how this case will proceed, on November 19, 2024, Defendants filed a renewed

22   /////

23   /////

24   /////

25   /////

26

27   [2] The Ninth Circuit did not address the separate issues of whether Defendants waived their right to compel arbitration or if the arbitration agreement would be enforceable as to Plaintiffs' claims
28   against Defendant U.S. Bancorp.

5

/////

motion to compel arbitration purportedly based on "new evidence."[3] (Doc. No. 39 at 10.) According to Defendants, their renewed motion seeks to "debunk[]" and "put[] to rest the Ninth Circuit's speculation about whether [Plaintiffs] might have believed an earlier contract controlled" when signing the Consumer Safe Deposit Box Contract in 2013 by providing evidence to show that "[i]n 2012, [Plaintiffs] were advised that they must execute new contracts in order to maintain their safe deposit box," and they did so. (*Id.* at 1, 9–10, 12.) Defendants argue, similar to the 2013 Consumer Safe Deposit Box Contract, the 2012 "Safe Deposit Box Contract" also incorporated by reference the then-existing "Safe Deposit Box Lease Agreement" that was contained within a document entitled "Your Deposit Account Agreement." (*Id.* at 10.)

On December 3, 2024, Plaintiffs filed an opposition to Defendants' renewed motion to compel arbitration, along with supporting declarations. (Doc. Nos. 42–45.) On December 13, 2024, Defendants filed a reply thereto, as well as objections to specific portions of Plaintiffs' declarations.[4] (Doc. Nos. 46–47.)

In addition to opposing the substance of Defendants' renewed motion, on December 3, 2024, Plaintiffs filed a motion to strike Defendants' renewed motion to compel arbitration. (Doc. No. 40.) Therein, Plaintiffs argue Defendants' renewed motion violates the court's Local Rules, this court's order directing the parties to submit a joint status report proposing how the case

---

[3] In their renewed motion, Defendants assert their new evidence consists of:

> The Declaration of Andrea Burns and all exhibits attached thereto: (A) 2000 [Safe Deposit Box] Contract; (B) 2012 Letter [notifying Plaintiffs that information on their contract needed to be updated and asking Plaintiffs to visit their branch and sign a new Safe Deposit Box Contract with the correct information]; (C) 2012 [Safe Deposit Box] Contract; (D) 2012 [Safe Deposit Box] Lease Agreement; (E) 2015 Bank Statement; (F) 2018 Bank Statement; (G) 2020 Bank Statement; (H) 2020 [Safe Deposit Box] Lease Agreement; and (I) 2021 [Safe Deposit Box] Lease Agreement.

(Doc. No. 39 at 10 n.3.)

[4] With one exception addressed in the analysis below, the objected to portions of Plaintiffs' declarations are not relied upon by the court in this order. Thus, the court need not address Defendants' objections or Plaintiffs' responses thereto. (Doc. Nos. 46, 50, 52.)

6

should proceed, and long-established precedent that "[o]ne may not file successive motions on the same issue by iterating the evidence it has had available to it for years, and re-submitting new attempts seriatim until the motion eventually succeeds." (*Id.* at 11–14.)

On December 16, 2024, Defendants filed an opposition to Plaintiffs' motion to strike. (Doc. No. 48.) On December 26, 2024, Plaintiffs filed a reply thereto. (Doc. No. 49.)

**LEGAL STANDARD**

The court construes Defendants' "renewed" motion to compel arbitration as a successive motion to compel arbitration. Defendants are seeking a "new ruling" based on a "new motion" with "new evidence" following remand of this case from the Ninth Circuit. (Doc. No. 48 at 7.) Indeed, the court's prior order granting Defendants first motion to compel arbitration has been vacated by the Ninth Circuit and a mandate has issued. (Doc. Nos. 31, 34.) Importantly, "the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court . . . ." *Nguyen v. United States*, 792 F.2d 1500, 1502 (9th Cir. 1986).

Neither the Federal Arbitration Act ("FAA") nor the Federal Rules of Civil Procedure prohibit the filing of successive motions to compel arbitration as a matter of course. Defendants assert their successive motion to compel arbitration is appropriate under the standard courts apply to successive motions for summary judgment. (Doc. No. 48 at 8.) To support this assertion, Defendants cite the decision in *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010), in which the Ninth Circuit held that "district courts have discretion to entertain successive motions for summary judgment" and such motions are "particularly appropriate on an expanded factual record." (*Id.* at 9.)

In certain circumstances, district courts have considered a second motion to compel arbitration where new evidence is presented, and the court's earlier denial did not reach the ultimate issue presented. For example, in *Zamudio v. Aerotek, Inc.*, 733 F. Supp. 3d 931, 937 (E.D. Cal. 2024), the defendant's first motion to compel arbitration "failed to provide enough details demonstrating that the signature on the arbitration agreement could only be attributed to [p]laintiff." Because the court was not presented with a valid arbitration agreement, it did not address whether the plaintiff's claims were subject to an arbitration agreement. *Id.* Instead, the

7

court denied the defendant's first motion to compel "without prejudice." *Id.* at 939 n.1. When the defendant moved to compel arbitration a second time with evidence authenticating the plaintiff's signature on the arbitration agreement, the plaintiff argued defendant's second motion should be held to the heightened standard for reconsideration. *Id.* The court disagreed, considering the motion anew in light of the expanded factual record presented by defendant. *Id.* The court noted that its express denial of defendant's first motion "without prejudice" was "an unnecessary caveat unless the [c]ourt was open to a renewed motion." *Id.* (citing *Hoffman*, 593 F.3d at 911).

Similarly, in *Smith v. Rent-A-Center, Inc.*, No. 1:18-cv-01351-LJO-JLT, 2019 WL 3004160, at *1 (E.D. Cal. July 10, 2019), the court denied defendant's first motion to compel arbitration because the "defendant had failed to authenticate [the plaintiff's] signatures on the purported agreements to arbitrate." When the defendant filed a second motion to compel arbitration that included "new evidence" to authenticate the validity of the plaintiff's signatures, the court considered the motion anew because the court "never ruled on the ultimate question of the [first] motion—whether the parties entered into an enforceable agreement that compels [the plaintiff] to arbitrate his claims." *Id.* at *3. Other courts have likewise considered second motions to compel arbitration after having denied the first motion to compel arbitration without prejudice. *See also Bernal v. Sw. & Pac. Specialty Fin., Inc.*, No. 4:12-cv-05797-SBA, 2014 WL 1868787, at *1 n.1, 4 n.4 (N.D. Cal. May 7, 2014) (considering second motion to compel arbitration where first motion was denied "without prejudice" to the filing of a renewed motion "because neither party had submitted a copy of [p]laintiff's loan application" which included arbitration agreements); *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 997 n.6 (N.D. Cal. 2012) (considering second motion to compel arbitration where the first motion was denied "without prejudice because of evidentiary problems").

However, courts are not required to entertain successive motions.[5] "District courts retain discretion to 'weed out frivolous or simply repetitive motions.'" *Hoffman*, 593 F.3d at 911. "It is

---

[5] Notably, the Ninth Circuit has not squarely addressed whether district courts have discretion to entertain renewed or successive motions to compel arbitration. *See Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1063 (9th Cir. 2005) (noting that "[t]here is no such animal as a 'renewed petition to compel arbitration' in the Federal Rules of Civil Procedure").

an elementary principle of judicial economy that parties are expected to raise all relevant arguments in the briefing on a given motion; parties do not get a second bite at the apple if their initial arguments fail." *Meeks v. Experian Info. Sols., Inc.*, No. 3:21-cv-03266-VC, 2022 WL 53832, at *1 (N.D. Cal. Jan. 5, 2022), *rev'd on other grounds and remanded sub nom. Meeks v. Experian Info. Servs., Inc.*, No. 21-17023, 2022 WL 17958634 (9th Cir. Dec. 27, 2022). Otherwise, "courts would exist in a state of paralysis, subject to a never-ending loop of argument on the same underlying issues." *Id.* (declining to consider successive motion to compel arbitration); *United States v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985) (noting the strong policy in favor of finality).

## ANALYSIS

As a preliminary matter, to the extent district courts have discretion to entertain successive motions to compel arbitration, the court declines to exercise that discretion here.

As noted above, Defendants assert that their successive motion is based upon "new evidence" that "disproves the Ninth Circuit's speculation about what [Plaintiffs] might have believed when they signed the 2013 [Consumer Safe Deposit Box] Contract." (Doc. No. 48 at 5.) Specifically, Defendants rely on documentation showing that in 2012, Plaintiffs signed a Safe Deposit Box Contract that purportedly incorporated by reference a Safe Deposit Box Lease Agreement that contained an arbitration clause. (*Id.*) But Defendants made the same argument with respect to a 2013 version of the Consumer Safe Deposit Box Contract in their first motion to compel arbitration—an argument the Ninth Circuit squarely rejected on appeal. (*See* Doc. Nos. 10 at 14–16; 21 at 3–5; 34 at 5–7.)

Critically, Defendants do not assert the 2012 documents are newly discovered. Defendants had both versions of the contracts in their possession and available to them when they filed their first motion to compel arbitration. Defendants admit to maintaining those contracts in their possession, custody, and control, "in the ordinary course of business." (Doc. No. 39-1 at 2–3.) Instead, Defendants argue that a successive motion is proper upon an "expanded record" and there is "no requirement that the new evidence be previously unavailable" under the standard outlined in *Hoffman*. (Doc. No. 48 at 10.) However, the court in *Hoffman* considered a successive

9

summary judgment motion because "the addition of a new expert witness after [a] mistrial expanded the factual record beyond what it had been at the time of [defendant's] pretrial summary judgment motion." *Hoffman*, 593 F.3d at 912.

Courts applying *Hoffman* have held that an "expanded factual record" refers to new evidence, not evidence that a party had in their possession but chose not to present to the court on a prior motion. For example, in *Brazill v. California Northstate College of Pharmacy, LLC*, No. 2:12-cv-1218-WBS, 2013 WL 4500667, at *2 (E.D. Cal. Aug. 22, 2013), the court refused to consider a second motion for summary judgment that was based on "evidence that could have been included in the [] first motion" rather than "a previously unavailable deposition, trial testimony, new expert witness, or similar evidence." Given these circumstances, the court was "not persuaded that an 'expanded factual record' in the sense meant by the *Hoffman* court [was] present." *Id.*; *see also AAA Flag & Banner Mfg. Co, Inc. v. Flynn Signs & Graphics, Inc.*, No. 09-cv-2053-ODW-VBK, 2010 WL 11463632, at *2 (C.D. Cal. Mar. 15, 2010) (noting defendants' successive motion was not the result of "new evidence" or "an expanded factual record" where the evidence defendants relied upon "in their new motion was available to them prior to the time to file their first motion"). Defendants have not pointed the court to any decisions in which courts have considered a successive motion to compel arbitration based on evidence the party had in their possession when they filed their first motion to compel arbitration.[6]

---

[6] Defendants cite to *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707 (4th Cir. 2015) for the proposition that they are not limited to only one motion to compel arbitration. (Doc. No. 48 at 8–9.) In *Dillon*, the district court denied the defendants' first motions to compel arbitration because the signatures on the relevant arbitration agreements had not been authenticated. 787 F.3d at 711. After obtaining declarations from third parties authenticating those signatures, the defendants filed renewed motions to compel arbitration, but the district court denied those renewed motions because the district court treated those motions as motions for reconsideration, and found the heightened standard for reconsideration had not been satisfied. *Id.* at 712. On appeal, the Fourth Circuit vacated the district court's order denying the renewed motions to compel arbitration. *Id.* at 715. The Fourth Circuit held that the district court erred by construing the renewed motions as motions for reconsideration and the district court should have considered the renewed motions because the issues presented had not been addressed in the district court's earlier order denying the first motions to compel arbitration. *Id.* The court does not find the decision in *Dillon* analogous to the circumstances of this case. Here, the district court and the Ninth Circuit both reached the merits on the ultimate issue of arbitrability presented in Defendants' initial motion to compel arbitration, and Defendants' pending motion raises those same issues.

Even if the court were to consider Defendants' successive motion to compel arbitration on the merits, it would fail for same reasons outlined by the Ninth Circuit with respect to Defendants' first motion to compel arbitration. The language in the 2012 Safe Deposit Box Contract purportedly incorporating by reference the Safe Deposit Box Lease Agreement is substantively identical to the language in the 2013 Consumer Safe Deposit Box Contract, which the Ninth Circuit analyzed. Specifically, the 2012 Safe Deposit Box Contract states:

> Renter(s) agrees to the terms of the "Safe Deposit Box Lease Agreement", as amended from time to time (the "Rules") . . . The Rules are incorporated herein by reference and made a part of this agreement. By signing, Renter(s) acknowledges receipt of . . . a copy of the present Rules . . . .

(Doc. No. 39-4 at 2.) The 2013 Consumer Safe Deposit Box Contract similarly states:

> Renter(s) agrees to the terms of the "Safe Deposit Box Lease Agreement", as amended from time to time (the "Rules") . . . The Rules are incorporated herein by reference and made part of this agreement. By signing, Renter(s) acknowledge receipt of . . . a copy of the present Rules . . . .

(Doc. No. 39-14 at 2.) As the Ninth Circuit concluded with respect to the 2013 Consumer Safe Deposit Box Contract, Defendants have not demonstrated that the 2012 Safe Deposit Box Contract incorporated by reference the Safe Deposit Box Lease Agreement because the Safe Deposit Box Lease Agreement was not "called to the attention" of Plaintiffs or "easily available" to Plaintiffs.[7]

Defendants do not explain why Plaintiffs "should have understood that the one-page [2012] Safety Deposit Box Contract represented an entirely new agreement that incorporated a separate document the [Plaintiffs] had never seen." (Doc. No. 34 at 5–6.) According to Defendants, Plaintiffs should have understood that the 2012 Safety Deposit Box Contract represented a new agreement because they received a letter from their branch asking them to visit the bank in 2012 to sign a "*new* Safe Deposit Box contract . . . ." (Doc. No. 39-3 at 2) (emphasis

---

[7] Curiously, Defendants' successive motion to compel arbitration advances incorporation by reference arguments based upon the 2012 Safe Deposit Box Contract despite the fact that the 2012 version was supplanted by the 2013 version, which was addressed by the Ninth Circuit. (Doc. No. 39 at 22.) At the hearing on the pending motions, the court inquired as to which contract Defendants believe controls. Defendants vacillated without providing a clear answer and reiterated that they address both the 2012 and 2013 contracts in their renewed motion.

11

added). However, the letter begins by notifying Plaintiffs that "information on [their] contract need[ed] to be *updated* in [Defendants'] system" and the "new Safe Deposit Box contract" would contain "all the correct information." (*Id.*) (emphasis added). The letter further explains that "reviewing and updating [the] Safe Deposit Box contract" would "not affect [Plaintiffs'] rental rate." (*Id.*) As in 2013, when Plaintiffs signed a Safe Deposit Box Contract while visiting the bank to get a new slot for their existing box, Plaintiffs "did not [go] to the branch [in 2012] to open a new account or to get a new safe deposit box; they had kept a box at the branch for [twelve] years." (Doc. No. 34 at 5.) They visited the bank solely to "update their contact information." (Doc. No. 42 at 9–10, 17.) Therefore, "it would not have been clear to a reasonable consumer under [these] circumstances that the [2012] Safe Deposit Box Contract represented a new agreement." (Doc. No. 34 at 5.)

Further, as with their first motion, here too there is a "genuine dispute of material fact as to whether the branch provided the Safe Deposit Box Lease Agreement to the [Plaintiffs]." (*Id.* at 6.) Plaintiff Peter Fong again declares that he and his brother did not receive any documents from the bank during their 2012 visit, similar to the circumstances in 2013.[8] (*See* Doc. No. 44 at ¶ 6.) Moreover, notwithstanding Defendants' characterization of the letter sent to Plaintiffs prompting their visit to the bank in 2012 as a letter notifying Plaintiffs that the purpose of the visit was to sign a new contract, Plaintiffs could reasonably have believed the 2012 agreement was a continuation of the agreement they had with the bank for several years, given their long-standing history of renting the safe deposit box. Additionally, because it would not have been clear to a reasonable consumer that the 2012 Safe Deposit Box Contract represented a new agreement, "there was no reason for [Plaintiffs] to request the separate document referenced in the form." (Doc. No. 34 at 7.)

In sum, Defendants' successive motion to compel arbitration does not present an

---

[8] Defendants object to this portion of Plaintiff Peter Fong's declaration on the grounds of relevance and the best evidence rule. (Doc. No. 46 at 5.) Defendants' objection is not well taken. As plainly reflected in the Ninth Circuit's decision, whether Plaintiffs received a copy of the Safe Deposit Box Lease Agreement is relevant to the analysis of Defendants' pending motion. Thus, the court overrules Defendants' objection to this portion of Plaintiff Peter Fong's declaration.

1  expanded factual record based on new evidence. Rather, Defendants again advance the same
2  incorporation by reference arguments that have been foreclosed by the Ninth Circuit. Therefore,
3  the court will deny Defendants' successive motion to compel arbitration. Consequently, the court
4  will also deny Plaintiffs' motion to strike Defendants' successive motion as having been rendered
5  moot by this order.

**CONCLUSION**

For the reasons explained above:

1. Defendants' renewed motion to compel arbitration (Doc. No. 39) is DENIED;
2. Plaintiffs' motion to strike Defendants' renewed motion to compel arbitration (Doc. No. 40) is DENIED as moot; and
3. The parties shall meet and confer regarding the scheduling of this case and file a joint status report within twenty-one (21) days from the date of entry of this order that addresses the following:
   a. contemplated amendments to the pleadings, including to simplify or clarify the issues and eliminate previous claims and defenses;
   b. the statutory bases for jurisdiction and venue;
   c. anticipated discovery and the scheduling of discovery, including:
      i. what changes, if any, should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made, and whether further discovery conferences should be held;
      ii. the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases;
      iii. what changes, if any, should be made in the limitations on discovery imposed under the Civil Rules, and what other limitations, if any, should be imposed;
      iv. the timing of the disclosure of expert witnesses and information

                       required by Rule 26(a)(2); and

            v.       proposed dates for discovery cut-off;

     d.       contemplated dispositive or other motions and a proposed date by which all non-discovery motions shall be filed;

     e.       methods that can be used from the outset to avoid unnecessary proof and cumulative evidence, and anticipated limitations or restrictions on the use of testimony under Federal Rule of Evidence 702;

     f.       appropriateness of special procedures such as reference to a special master or agreement to try the matter before the assigned magistrate judge pursuant to 28 U.S.C. § 636(c);

     g.       proposed modification of standard pretrial procedures because of the simplicity or complexity of the case;

     h.       whether the case is related to any other case pending in this district, including the bankruptcy court of this district;

     i.       optimal timing and method for settlement discussions, including whether a court-convened settlement conference should be scheduled, whether in the case of a jury trial the parties will stipulate to the trial judge acting as a settlement judge, and the parties' positions with respect to Voluntary Dispute Resolution ("VDRP") as required by Local Rule 271(d); and

     j.       any other matters that may be conducive to the just and expeditious disposition of the case.

IT IS SO ORDERED.

Dated: **March 6, 2025**

_____
Dena Coggins
United States District Judge