J. Toji Calabro (SBN 239950)
CALABRO | LAW OFFICE
Two Pershing Square
2300 Main Street, 9th Floor
Kansas City, Missouri 64108
Tel: (888) 585-1247
Email: tojicalabro@calabro-law.com

Attorney for Plaintiffs

GREENBERG TRAURIG, LLP
KARIN L. BOHMHOLDT (SBN 234929)
bohmholdtk@gtlaw.com
SAM PAYNE (SBN 307484)
sam.payne@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800

GREENBERG TRAURIG, LLP
MICHAEL M. KRAUSS (Admitted Pro Hac Vice)
kraussm@gtlaw.com
90 South 7th Street, Suite 3500
Minneapolis, Minnesota 55402
Telephone: (612) 259-9700
Facsimile: (612) 677-3101

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

PETER FONG, *et al.*,

Plaintiffs,

v.

U.S. BANCORP, *et al.*,

Defendants.

Case No. 2:22-cv-01291-DC-CSK

**JOINT STATEMENT REGARDING DISCOVERY DISAGREEMENT FOR PLAINTIFF'S MOTIONS TO COMPEL AGAINST U.S. BANK NATIONAL ASSOCIATION**

Hearing: October 6, 2026
Time: 10:00 a.m.
Courtroom: 25
Judge: Hon. Chi Soo Kim

Plaintiffs Peter Fong and Sut Fong (collectively "Plaintiffs" or the "Fongs") and Defendants U.S. Bancorp ("Bancorp") and U.S. Bank National Association ("USBNA," collectively with Bancorp "Defendants") submit this Joint Statement Regarding Discovery Disagreement concerning Plaintiff Peter Fong's motion to compel USBNA to provide further responses to Plaintiff's first set of requests for production (ECF 123) and first set of interrogatories (ECF 125).

## I. BACKGROUND

In this case, consumer plaintiffs allege that the bank defendants closed and systematically "drilled" into plaintiffs' safe deposit box in California. Plaintiffs allege various common law and statutory claims arising out of these events. Defendants dispute these claims.[1]

## II. DISPUTED ISSUES

Plaintiff served discovery on September 17, 2025. Defendants served Objections on October 17, 2025, claiming that discovery was not yet open. After this Court clarified that discovery was open (ECF 86), Defendants served supplemental responses on February 9, 2026. USBNA's supplemental RFP responses are attached hereto as **Exhibit A**. USBNA's supplemental interrogatory responses are attached hereto as **Exhibit B**. The parties have engaged in extensive attempts to meet and confer, including a lengthy call on June 2, 2026, and as reflected in the attached **Exhibits C, D, and E.** Despite those efforts, Defendants declined to change any of the responses they served on February 9, 2026. This motion follows.

### A. Plaintiffs' Position: Boilerplate Objections and Refusal to State Whether Responsive Materials Are Being Withheld

#### 1. Plaintiffs' Position

Defendants moved to compel further responses to certain of USBNA's document requests because, Defendants claim, Plaintiffs' responses contain "boilerplate objections and conditional production language, and either limit any representation that nothing is withheld or decline to respond at all." (*See, e.g.,* Joint Statement re Discovery Disagreement concerning USBNA's motion to compel further responses to USBNA's requests for production at § III.B.) Plaintiffs dispute that claim. Plaintiffs' response specifically states that "[e]xcept for privileged materials to be logged as required, and expert

[1] Defendants maintain that all positions taken in this Joint Statement are subject to U.S. Bancorp's position that this Court lacks personal jurisdiction over it.

discovery which is not yet due, ***no responsive materials that Plaintiff was able to locate after a reasonable search/investigation are being withheld based on any objection asserted above***." (Pl. Supp. Response to USBNA RFP 1 (emphasis added).)

By contrast, USBNA served boilerplate objections that were so verbose, its objections to a single request often spanned several pages. (*See generally* Ex. A & B.) And its responses to Plaintiffs' RFPs and interrogatories include the very "conditional" language that USBNA claims is improper: qualifying its responses with "Subject to and without waiving its objections." (*See* Ex. A at RFPs 1, 2, 4, 6, 7, 9, 12, and 17; Ex. B at Interrogatories 1, 2, 3, 4, 5, 8, 10.)

Rule 34 is clear: "An objection ***must*** state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C) (emphasis added). Defendants' answers plainly do not do that. Plaintiffs are entitled to know whether Defendants are withholding anything based on the objections to which Defendants have subjected their responses.

The Parties met and conferred on this. In their June 2, 2026, meet and confer call, the parties discussed having Defendants propose a protocol on how the parties should address this issue. Plaintiffs' counsel tried to memorialize what was discussed, (Ex. D at 4 ("USB will propose whether the parties should identify whether they are withholding any documents subject to their objections")), but Defendants' counsel refused to confirm or deny that: "Not going to do this." (*Id.* at 2-3.) Plaintiffs' counsel tried again for clarification (*id.* at 1), but Defendants' counsel refused to respond.

Nevertheless, Plaintiffs' counsel subsequently served supplemental responses on June 22, 2026, stating for each request where applicable "no responsive materials . . . are being withheld based on any objection asserted above." This is compliant with Rule 34, yet Defendants have still filed a motion to compel Plaintiffs to provide more, claiming Plaintiffs' response is not enough. But Defendants have not changed any of their responses to provide the very information Plaintiffs have already provided.

Defendants state below that there is no authority "indicating that a party may not respond appropriately by agreeing to produce documents while preserving their objections." But the issue is not about preserving objections. Of course legitimate objections can be maintained. Rather, the question is

whether Defendants must state whether they are withholding documents based on any asserted objection (privilege-based and non-privilege-based objections), and the Rule unambiguously requires it.

Defendants also suggest below that the parties' meet and confer efforts focused only on whether documents were being withheld based on privilege. That is demonstrably false. (See, e.g., Ex. C at 4, 15, 22; Ex. D at 1, 4.) Plaintiffs have consistently demanded to know whether documents are being withheld based on any objection.

Defendants' discussion of the Bank Secrecy Act and related privileges is addressed below. (*Infra*, § II.D.1.)

The Court should order Defendants to provide responses compliant with Rule 34 and, specifically, state, for each objection (whether privilege-based or non-privilege-based), whether they are withholding any documents based on the objection.

2. Defendants' Position

The objection is not boilerplate and there are two issues. First, Defendants have located no authority, and Plaintiffs have provided none, indicating that a party may not respond appropriately by agreeing to produce documents while preserving their objections. Second, regardless, during the meet and confer, the issue Plaintiffs focused on was whether documents were being withheld on the basis of any privilege. Defendants already agreed that they would advise if any documents are withheld on the basis of any privilege objection before the complaint was filed, except if such documents are withheld (if any, and we neither confirm nor deny) on the basis of the Bank Secrecy Act or other governmental privileges, which do not permit financial institutions to reveal documents that could reveal the existence or the non-existence of any protected document. 31 U.S.C. § 5318(g)(2)(A)(i), 31 C.F.R. § 1020.320(e)(1), and 12 C.F.R. § 21.11(k)(1)(i); *Garcia v. Navy Fed. Credit Union*, 2024 WL 4142678, at *4 (S.D. Cal. Sept. 10, 2024) (noting the "strong public policy that underlies the SAR system as a whole . . . [which] leans heavily in favor of applying SAR confidentiality not only to the SAR itself, but also in appropriate circumstances to material prepared by the national bank as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not") (citations omitted); *McNamara v. Wells Fargo & Co.*, 2022 WL 3019855, at *4 (S.D. Cal. July 29, 2022) ("[N]o national bank, and no director, officer, employee, or agent of a national bank, shall disclose a SAR or any

information that would reveal the existence of a SAR.") (citing 31 U.S.C. § 5318(g)(2)(A)(i)). Beyond this, there is no reason for any order here and Defendants already stated that they would list any pre-filing attorney-client withholding on a privilege log. (No such documents have been identified.)

**B. Rog 1**

1. Plaintiff's Position

Interrogatory No. 1 requested USBNA to "IDENTIFY all persons involved in the decision to drill into Plaintiffs' box ***and/or*** the actual act of drilling the box" (Ex. B at Rog 1), and "IDENTIFY" is defined to mean "provide the PERSON's full name, phone number, address, email address, employer, work title, and work responsibilities."[2]

USBNA's response, "subject to and without waiving its objections," was:

> The following U.S. Bank employees were present when the Fongs' safe deposit box was drilled in November 2021: Amanda Mayer, former U.S. Bank Market Operations Leader, and Renee Owens, former U.S. Bank Market Operations Analyst. Upon information and belief, the box was drilled in Ms. Mayer and Ms. Owens' presence by a third-party locksmith, whose identity is not currently known.

USBNA provided only the names of individuals who were present while the box was drilled. It did not identify persons who were part of the decision to drill into the box. Defendants should be ordered to do so. Further, for all persons so identified, USBNA should be ordered to provide the contact and employment information Plaintiff requested under the definition of "IDENTIFY." Such information is relevant and proportional to the needs of the case because it is necessary to identify, locate, and contact potential witnesses.

Defendants claim below that the decision to drill the box "has nothing to do with this case." But according to Defendants, they intend to argue that there were contractual provisions that permitted them to drill into the box. (See, e.g., ECF 115 at 14.) And according to the documents Defendants submitted (improperly) in support of their motion to dismiss, USB had a "duty to use reasonable care to prevent anyone else from opening the box other than [Plaintiff] or [Plaintiff's] appointed deputy . . . except as we may otherwise be required or permitted by law." (ECF at 18.) Another provision provides that the bank

[2] Pursuant to the Court's Order, Plaintiff is not attaching the discovery requests containing the definition. (ECF 128.)

may "forcibly open the box in accordance with applicable law," only after certain conditions are met. (*Id.* at 19.) Thus, whoever was involved in the decision to drill the box is clearly relevant: Plaintiffs are entitled to depose them to determine how they determined all the conditions were met and how they were satisfied that applicable law permitted drilling into Plaintiffs' box.

Defendants also complain below that this issue was not the focus of any meet and confer. But Defendants only pointed out this document with their filing in August, and by then, meet and confer efforts had become futile. As documented in defense counsel's own email, the parties conducted a 2 hour meet and confer in June, "achieving very little progress." (Ex. D at 2.) During that call, the parties discussed Defendants' requests but, despite Plaintiffs asking at the beginning of the call to reserve time for Plaintiffs' requests, Defendants would not extend the call further to talk about Plaintiffs' issues, claiming it would be a waste of time, and that Defendants have already stated their position in the parties' emails. (Ex. D at 4.) Defendants' counsel would not even confirm very basic information about what Defendants' position on issues were. (Ex. D at 1-4.) They responded: "Not going to do this." (*Id.*) In any case, the information is clearly relevant and discovery is coming to a close. Defendants initiated this round of motions to compel and it is the most efficient use of judicial resources to address this issue now when all parties are already before the Court. Defendants should be ordered to respond in full.

2. Defendants' Position

This issue was never part of any discussion between the parties on the meet and confer, which took place six months ago. On the contrary, the only issue Plaintiffs raised related to contact information and the parties *resolved* that issue. Given that, the issue was apparently not significant to Plaintiffs from the outset. However, Defendants have had no opportunity to consider this new issue since Plaintiffs provided only several days' notice when they decided to bring this motion. Regardless, the decision to drill the box (which it is undisputed is the result of a consolidation of boxes at U.S. Bank branches) has nothing to do with this case.

**C. Rog 5**

1. Plaintiff's Position

This case is fundamentally about what happened to the contents of Plaintiffs' box. Thus, Plaintiff requested, "Describe in detail the chain of custody of the contents from the moment of the drilling of

PLAINTIFFS' safe deposit box until the present." (Ex. B, Rog 5.) USBNA responded, "subject to and without waiving its objections":

> Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, and without waiving any objections, Responding Party states that information responsive to this Interrogatory may be derived from the procedures set forth in the Drilling Process for Escheatable Safe Deposit Boxes procedures to be produced.

The referenced document, "Drilling Process for Escheatable Safe Deposit Boxes," (USBNA000000829-832) is a policy form: a standard procedure for drilling. It does not answer the interrogatory: what is the actual chain of custody for the contents of Plaintiffs' box? Rule 33(d) permits a party to answer by reference to business records only where "the answer to an interrogatory may be determined by examining" those records. Fed. R. Civ. P. 33(d). A generic procedure cannot show who actually handled the Fongs' property, when, or where it went. Defendants should be ordered to answer this interrogatory in full.

As for Defendants' complaint about meeting and conferring, see the discussion above regarding Defendants' refusal to meet and confer on all of Plaintiffs' issues. (*Supra*, § II.B.1.) In any case, the information is clearly relevant and discovery is coming to a close. Defendants initiated this round of motions to compel and it is the most efficient use of judicial resources to address this issue now when all parties are already before the Court. Defendants should be ordered to respond in full.

2. Defendants' Position

This issue was never part of any discussion between the parties on the meet and confer, which took place six months ago. The only issue raised was that the response was given subject to the objections. Given that, the issue was apparently not significant to Plaintiffs from the outset. However, Defendants have had no opportunity to consider this new issue since Plaintiffs provided only several days' notice when they decided to bring this motion. Regardless, the referenced document was produced (*see* USBNA_000000829 - USBNA_000000832).

**D. RFP 3, Rogs 6 & 7**

1. Plaintiffs' Position

It is an undisputed fact that Defendants conducted an investigation into Plaintiffs' allegations that the contents of their safe deposit box were missing / stolen. Defendants even wrote a letter to Plaintiffs

disclosing that an investigation supposedly took place. (ECF 17-2.) That letter, from a non-attorney, described the investigation and the policies and procedures that are "stringently reviewed and internally monitored for compliance," (*id.* at 2) and even invited the Fongs to "request a copy of any available video surveillance." (*Id.* at 3.) Accordingly, Plaintiff requested "ALL DOCUMENTS CONCERNING ANY investigations, reviews, or other inquiries YOU conducted relating to PLAINTIFFS' allegations of missing property, including but not limited to" photos and other media, policies and procedures consulted, interviews, records and other investigatory materials. (Ex. A, RFP 3.) Plaintiff further requested that USBNA "[d]escribe in detail ALL investigations, reviews, or other inquiries YOU conducted into PLAINTIFFS' allegations of missing property, including dates, investigators, methods used, and findings," (Ex. B, Rog 6), and "IDENTIFY ALL PERSONS who participated in and/or reviewed any aspect of the investigations . . . identified in Interrogatory No. 6" (*id.*, Rog 7).

Defendants refuse to produce ***any*** materials or provide any substantive response, claiming they are privileged. But Defendants have the burden to establish that the attorney-client privilege and/or the work-product doctrine applies here and they have failed to do so. *See Debeaubien v. California,* No. 2:19-cv-1329 WBS DB, 2020 LX 29595, at *6 (E.D. Cal. Oct. 26, 2020) ("investigatory reports and materials are not protected by the attorney-client privilege or the work-product doctrine").

During the parties' meet and confer efforts, Defendants also claimed that the Bank Secrecy Act prevents Defendants from discussing these issues at all. That is untrue. The Bank Secrecy Act may protect suspicious activity reports ("SARs") themselves, but it explicitly does not apply to the "underlying facts, transactions, and documents upon which a SAR is based," 12 C.F.R. § 21.11(k)(1)(ii)(A)(2), or "documents produced in the ordinary course of business pertaining to the defendants' banking activities, transactions, and accounts." *In re JPMorgan Chase Bank, N.A.*, 799 F.3d 36, 40 (1st Cir. 2015). Plaintiffs do not request SARs. And at best for Defendants, to the extent any SAR was filed with respect to the Fongs or any other issue relevant to this case, Plaintiffs are still entitled to the disclosure of the underlying information and documents.

Defendants have also lodged a "Confidential Supervisory Information" objection, but it provides even less protection. The "bank examination privilege, like the deliberative process privilege, shields from discovery only agency opinions or recommendations; it does not protect purely factual material." *In re*

*Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992). "Even when asserted to protect deliberative material, the privilege may be overridden where necessary to promote the paramount interest of the Government in having justice done between litigants." *Id.* And "[b]ecause the bank examination privilege is not absolute, each time it is asserted the district court must undertake a 'fresh balancing of the competing interests,' which will frequently require it to examine the disputed documents in camera." *Id.*

Defendants note below that non-privileged materials have been produced. And while some such materials have been produced, nowhere do Defendants state that ***all*** non-privileged materials have been produced. And they have not adequately logged the privileged materials. Notably, the parties have discussed that even the authorities Defendants cited during the parties' meet and confer and here, including *McNamara*, provide for in camera review of putatively privileged materials.

Thus, Defendants should be ordered to produce all documents responsive to these requests and/or justify whatever documents they are withholding. At a minimum, to the extent Defendants contend that any responsive material is protected by the SAR or bank examination privilege, Defendants should be ordered to submit that material to the Court for in camera review.

2. Defendants' Position

First, ***non-privileged investigatory materials already have been produced***, as Plaintiff should know. Second, Defendants already agreed to produce a privilege log for any pre-complaint attorney-client communications. No such documents have been identified to date. Third, that leaves the possibility that there could be documents subject to governmental privileges, for which Defendants ***may not reveal their existence or non-existence***, much less produce them if they exist. Defendants explained to Plaintiff repeatedly that they could not state whether or not such documents ***even exist*** because to do so subjects U.S. Bank to ***criminal*** liability. There is no basis to compel anything here, not even a further privilege log because the regulatory privileges that belong to the government are serious and not subject to waiver.

Simply, the laws governing Suspicious Activity reports and Confidential Supervisory Information forbid a financial institution from revealing the existence or the non-existence of any such materials under penalty of ***criminal*** prosecution. *See, e.g.*, 31 U.S.C. § 5318(g)(2)(A)(i), 31 C.F.R. § 1020.320(e)(1), and 12 C.F.R. § 21.11(k)(1)(i); *Garcia v. Navy Fed. Credit Union*, 2024 WL 4142678, at *4 (S.D. Cal. Sept.

10, 2024) (noting the "strong public policy that underlies the SAR system as a whole . . . [which] leans heavily in favor of applying SAR confidentiality not only to the SAR itself, but also in appropriate circumstances to material prepared by the national bank as part of its process to detect and report suspicious activity, regardless of whether a SAR ultimately was filed or not") (citations omitted); *McNamara v. Wells Fargo & Co.*, 2022 WL 3019855, at *4 (S.D. Cal. July 29, 2022) ("[N]o national bank, and no director, officer, employee, or agent of a national bank, shall disclose a SAR or any information that would reveal the existence of a SAR.") (citing 31 U.S.C. § 5318(g)(2)(A)(i)).

Plaintiffs' cases do not hold otherwise. Plaintiffs cite *Debeaubien v. California,* No. 2:19-cv-1329 WBS DB, 2020 LX 29595, at *6 (E.D. Cal. Oct. 26, 2020) for the proposition that investigatory materials are not privileged, but (1) the case is about the attorney-client privilege, not these regulatory governmental privileges, and (2) ***Defendants already produced non-privileged investigatory materials, as Plaintiffs know***. Plaintiffs likewise cite *In re JPMorgan Chase Bank, N.A.*, 799 F.3d 36, 40 (1st Cir. 2015) and *Camenisch v. Umpqua Bank* 763 F. Supp. 3d 871, but again these cases merely holds that investigatory materials leading to privileged materials are not subject to the Bank Secrecy Act – and again, ***Defendants already produced such non-privileged investigatory materials***. *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 634 (1992), dealing with Confidential Supervisory Information, is the same.

**E. Rog 8, RFP 5**

1. Plaintiffs' Position

There are several disputes about whether there was ever surveillance video relevant to Plaintiffs' safe deposit box and, if there was, what happened to it. Despite Defendants inviting Plaintiffs to request a copy of surveillance videos (ECF 17-2 at 3), Defendants' prior counsel, Lisa Simonetti, represented to Plaintiffs' counsel in October 2023 that "The Bank confirmed that there is no video of the drilling. The retention period is 90 days." (Ex. E.) Defendants have also produced documents in discovery showing that there was in fact video surveillance of the bank branch: "Surveillance video of California branch 3824 was reviewed on 11/17/2021 for possible camera angle for the safe deposit boxes, however there is ***currently*** no video footage of the safe deposit box room." (Ex. F (emphasis added).)

Thus, in ***Interrogatory No. 8*****,** Plaintiff asked USBNA to "[e]xplain in detail what happened to the surveillance video(s) CONCERNING PLAINTIFFS' safe deposit box being accessed, removed, drilled,

or its contents being handled in any way (at any time before, during, and after the box was drilled), from the date the video(s) were first made to the present." (Ex. B, Rog 8.) USBNA responded, "subject to and without waiving its objections," that "it did not have cameras in the room where the Fongs' safe deposit box was drilled and/or its contents inventoried." (*Id.*)

But Defendants' response is not fully responsive. Even if there were no cameras "in the room," that does not mean that there is no relevant surveillance video. Remember that the safe deposit boxes were kept in the bank's vault. The idea that there are no video cameras near the bank vault that would capture, for example, what is happening in the bank vault, or who went in and out, and what they were carrying (or not) when they entered and exited—that seems very odd. Further, recall that USBNA's outside counsel (Ex. E) and internal investigator (Ex. F) both suggested that there was or that they expected there to have been surveillance video.  But even if there are no such video cameras that were even near the bank vault and never captured anything that happened near the bank vault, Defendants can simply put that in their verified responses. Either way, Defendants should be ordered to answer the Interrogatory as posed, not artificially narrowed as Defendants did unilaterally.

Relatedly, Plaintiffs also asked, in ***RFP 5***, for a "floor plan of the USB SACRAMENTO BRANCH showing the placement of surveillance cameras in that branch." (Ex. A, RFP 5.) Such a floor plan is relevant for multiple reasons. First, it is relevant to determining whether there was a camera near the safe deposit boxes; illustrating for a fact finder where the safe deposit boxes were kept in relation to the bank as a whole, how secure the area was, how open and/or closed off from the rest of the bank were the safe deposit boxes, whether anyone could access and/or remove items from safe deposit boxes without bank employees and/or others watching. Second, a floor plan marking the location(s) of the video surveillance equipment will also allow the parties (and their experts) to evaluate whether the bank's video surveillance coverage was consistent with industry custom and practice. (3AC ¶¶ 93-94.) Further, if the map reveals that there was / was supposed to be video surveillance of the safe deposit box area, but there was not (either due to lack of maintenance or otherwise), that is also relevant to Plaintiffs' negligence claim. (*Id.*) All indications suggest that there should have been a camera there. After all, the boxes were kept in the Bank's vault. And the suggestion that the bank did not have or did not need to have video surveillance of the bank vault would be relevant to whether the bank was deficient.

USBNA's objections should be overruled. The floor plan is obviously relevant and not burdensome to produce. And the parties have already stipulated to a confidentiality order that this Court has entered. (ECF 99.) Notably, Defendants were the principal drafters of the stipulated order, which was submitted after Plaintiffs served Defendants with this request for production. Defendants have not identified any way in which the stipulated order they drafted and negotiated is insufficient to protect any documents they are ordered to produce in this litigation.

Further, Defendants' argument today that "there are no floor plans for the time period at issue" comes for the first time in this motion—there's no statement under oath so providing. And Defendants' claim that floor plans for other time periods are irrelevant should also be set aside. Even assuming that floor plans for the relevant time period do not exist, floor plans from other periods allow for more efficient questioning of deponents who worked in the bank: how does this floor plan—if at all—differ from the floor plan in 2021 (when the Fongs' box was drilled), where were the security cameras, why were these changes made? Etc. Further, if there are floor plans from other eras, they can be analyzed to see whether camera locations changed (or did not), and why.

2. Defendants' Position

Beginning with a RFP that asks for a ***bank floor plan***, to say that a request for a bank floor plan for an unlimited period is grossly inappropriate is an understatement. Quite obviously, bank floor plans bring into play highly confidential, sensitive, and most importantly, extreme security concerns. Regardless, there are no floor plans for the time period at issue and current floor plans cannot in any way be relevant, much less to overcome the serious security concerns. Even if these floor plans existed in some sort of producible form its production cannot be justified by the arguments Plaintiffs make. Plaintiffs ask for production of a floor plan that shows where video surveillance cameras are located, but even if it were not a gross security concern to have any such information produced (i) the only relevant tine period would be the day of the drilling, and (ii) regardless, they have no claim that would make the placement of video surveillance relevant or material to the case.

As for the interrogatory, the response provided is fulsome and complete. Plaintiffs have misrepresented repeatedly the nature of the meet and confer communications with counsel and the letter they received from U.S. Bank when they first demanded video surveillance on these topics previously and

obviously will continue to do so. But U.S. Bank has made every effort to assuage all concerns here – if there were any legitimate concern – that there was never any video surveillance of the drilling or inventorying of this box. And, even if there were—and there was not—any such surveillance footage was subject to retention and would not have been preserved by the time this lawsuit was served. There is nothing more to say and the response is fulsome, accurate, and proper.

**F. RFP 9**

1. Plaintiffs' Position

It is undisputed that after Plaintiffs realized their property was missing, they sought assistance from various law enforcement and regulatory agencies, including the Sacramento Police Department, the FBI, the Office of the Comptroller of the Currency, and the Consumer Financial Protection Bureau ("CFPB"). (3AC ¶¶ 39-40.) Before this litigation began, Defendants disclosed that the Bank reached out to the police (ECF 17-2 at 2 ("the employees contacted the police")), in a letter Defendants wrote in connection with the CFPB's investigation (*id.*). Thus, Plaintiffs have asked for all communications with law enforcement and regulatory agencies (not just bank examiners) concerning the Fongs' allegations and this action.

For the reasons stated above (*supra*, § II.D.1), Defendants' objections should be overruled, and Defendants should be ordered to produce all documents responsive to this request and/or justify whatever documents they are withholding. Notably, Defendants have also requested that Plaintiffs produce such documents, which Plaintiffs have produced. (*See* USBNA RFPs to Plaintiffs Nos. 4 & 9.)

2. Defendants' Position

On its face this request is improper. We respectfully refer the Court to Defendants' discussion above at (RFP 3, Rogs 6 & 7), which raise the same concerns and issues.

**G. RFP 10, Rog 9**

1. Plaintiffs' Position

If Defendants have received complaints alleging the same or similar claims at issue here, that is relevant to various issues including knowledge, reasonableness, and willfulness / punitive damages. *See, e.g., Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1027-28 (9th Cir. 2017) (holding that internal tracking of complaints supports a claim of knowledge of issue); *In re Nuna Baby Essentials Rava Litig.*, No. 25-

cv-01284-AMO, 2026 LX 391325, at *12 (N.D. Cal. July 1, 2026) ("presale complaints may form the basis for an inference of presale knowledge."); *In re Uber Techs., Inc. Passenger Sexual Assault Litig.*, No. 23-md-03084-CRB (LJC), 2024 LX 254308, at *42 (N.D. Cal. Mar. 1, 2024) ("Rule 26(b)(1) specifically contemplates that information . . . such as 'other incidents of the same type'" can "be relevant and discoverable"); *Hall v. Marriott Int'l, Inc.*, No. 3:19-cv-01715-JLS-AHG, 2021 LX 10551, at *79 (S.D. Cal. May 12, 2021) ("any complaints regarding the fees are relevant"); *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 562-63 (S.D. Cal. 2019) ("information regarding whether the same defects were reported to BMW in other cars of the same make, model, and year as Plaintiff's subject vehicle could conceivably be relevant to whether BMW acted reasonably in denying Plaintiff's warranty claim. A fact finder may find BMW's knowledge or lack of knowledge about the same defects to be a consideration in deciding whether BMW acted in good faith as to Plaintiff's specific case").

In addition, Defendants have already put at issue the credibility of Plaintiffs' allegations, arguing that it is "not a plausible allegation that a national bank acted with felonious intent to steal." (ECF 95 at 19:21.) Thus, whether Defendants received other complaints, and how those complaints were handled / resolved is relevant to the very issue Defendants have opened the door to.

Plaintiff requested "ALL complaints, claims, reports, notices, lawsuits, arbitration or other judicial proceedings, and other DOCUMENTS referencing ANY allegation (substantiated or otherwise) YOU received that the contents of a safe deposit box in a U.S. Bank branch (at any location) were missing and/or not properly returned to the PERSON who rented the safe deposit box." (Ex. A, RFP 10.) Plaintiff also served a related interrogatory: "IDENTIFY every instance of DEFENDANTS drilling into a safe deposit box between January 1, 2000, and the present where the customer complained of the drilling and/or alleged any wrongdoing arising from such actions." (Ex. B, Rog 9.)

Defendants refuse to produce ***anything*** because—they claim, without substantiation—that they cannot just "push a button" for this information. (Ex. A at 6-7.) That is not enough. "It is well-established that the burden is on the objecting party to show grounds for failing to provide the requested discovery." *Berger v. Home Depot United States, Inc.*, No. SA CV 10-678-SJO (PLAx), 2010 U.S. Dist. LEXIS 152830, at *5 (C.D. Cal. Oct. 7, 2010). But Defendants have refused to substantiate their burden objection with any substantive explanation—let alone evidence.

To try to reach a compromise, Plaintiffs requested that Defendants explain why it is not possible / feasible to identify any / most / substantially all / all complaints regarding other times Defendants have been accused of inappropriately accessing / "drilling" the contents of safe deposit boxes. Plaintiffs noted that it is hard to believe that a bank the size of US Bank has no systems in place to track this kind of information at all. Plaintiffs further explained that they do not know how to narrow the request to something that Defendants will accept since Plaintiffs do not know Defendants' systems and do not know what Defendants have. Plaintiffs explained that they have signaled what they are looking for in their discovery requests and asked Defendants for a proposal, but Defendants declined. (Ex. C at 6-7.)

As this Court has recognized, "Defendant, as the responding party, is the best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." *Owen v. Hyundai Motor Am.*, 344 F.R.D. 531, 536 (E.D. Cal. 2023). And "the onus" for proposing means to search Defendants' own files is on Defendants. (*Id.*)

Because Defendants have refused to work with Plaintiffs on this issue, the Court should do what it has done before: order that Defendants "shall conduct searches on [their] databases," including any "customer complaint database for information responsive to this request," *Owen*, 344 F.R.D. at 536, and produce responsive documents. Defendants should also be ordered to "identify, by category or type, the sources (i.e., databases) containing potentially responsive information that it is neither searching nor producing," *id.* These sources should include non-duplicative paper files and other non-database repositories of documents where Defendants could keep such information so that the parties can meaningfully meet and confer regarding compliance with this request. Nor is this "class discovery." Plaintiffs seek evidence of similar complaints because it bears on Defendants' knowledge, the reasonableness of their conduct, and punitive damages on Plaintiffs' individual claims, not to certify a class.

Defendants claim below that they are unaware of a complaint "involving items missing from a safe deposit box that was drilled ***as part of the Bank's safe deposit box consolidation project in 2021***." (emphasis added). That is a very particular and suspicious narrowing of the issues. The question is not whether it was done in connection with a safe deposit box consolidation, let alone one done in 2021. For

discovery purposes, the question is whether customers have complained that USBNA personnel drilled into their safe deposit boxes and that they were harmed as a result.

2. Defendants' Position

Plaintiffs expressly chose, in a stipulated agreement, to abandon all class claims. Yet they still insist on seeking what is, in effect, class discovery. This is improper.

Regardless, while U.S. Bank does not believe these requests to be relevant, in an effort to put the issue to rest, U.S. Bank repeatedly explained ***that this information does not exist; our client cannot just "push a Button" and spit out a list of complaints made along the lines being sought***. U.S. Bank explained that it had done a diligent, reasonable investigation to determine if this could be provided and had determined that it would be extremely difficult, if not impossible, to do this. Responsive documents are not readily searchable and compilable and although U.S. Bank and its counsel have attempted to determine a way to respond, it has located no way to do so. To be sure, U.S. Bank is not required to create new documents where none exist. Although U.S. Bank invited Plaintiffs to consider some sort of narrowed approach, they declined to do so.

Nevertheless, based on the Bank's undertakings to date, aside from Plaintiffs' complaint, U.S. Bank is unaware of any relevant customer complaints similar to Plaintiffs' complaint (that is, involving items missing from a safe deposit box that was drilled as part of the Bank's safe deposit box consolidation project in 2021).

**H. RFP 11**

1. Plaintiffs' Position

Courts routinely recognize that personnel files are discoverable as the documents "may have relevance to Plaintiff's claims for punitive damages and may show intent, knowledge, or absence of a mistake by Defendant." *Winn v. Cappalla*, No. 2:23-cv-00986-AB-SSC, 2024 LX 53159, at *8 (C.D. Cal. Sep. 13, 2024) (collecting cases); *see also United States v. Paksn, Inc.*, No. CV 15-09064-SB (AGRx), 2022 U.S. Dist. LEXIS 96686, at *3 (C.D. Cal. May 10, 2022) ("documents regarding promotions, demotions, complaints or disciplinary proceedings pertain to the credibility of witnesses and provide a means to compare statements made during depositions to documents maintained by the employer." (cleaned up)); *Soto v. City of Concord*, 162 F.R.D. 603, 614 (N.D. Cal. 1995) ("Personnel files, including

records of training, conduct, performance, and evaluation of officer-defendants in excessive force cases have been held to be relevant.”). So Plaintiffs requested the “personnel files for Branch Manager Bobby Escalante, and all others involved in the handling, ‘drilling,’ and/or closing of PLAINTIFFS’ safe deposit box at any point from September 1, 2021, to December 31, 2021.” (Ex. A, RFP 11.)

While Plaintiffs recognize that the entire file may be overbroad, Plaintiffs are willing to narrow their requests to any documents in the files relating to background checks, disciplinary actions, instances and/or accusations of untruthfulness, malfeasance, or nonfeasance, training on operative bank procedure, failure to follow bank policies and/or other instances of insubordination, any complaints about the individual, and/or anything related to the allegations Plaintiffs make, or cases similar to Plaintiffs’ case. Any employee privacy concerns are fully addressed by the stipulated protective order. (ECF 99.)

As for Defendants’ complaint about meeting and conferring, see the discussion above regarding Defendants’ refusal to meet and confer on all of Plaintiffs’ issues. (*Supra*, § II.B.1.) In any case, the information is clearly relevant and discovery is coming to a close. Defendants initiated this round of motions to compel and it is the most efficient use of judicial resources to address this issue now when all parties are already before the Court. Defendants should be ordered to respond in full.

This information is plainly relevant. The Court should order Defendants to produce it.

2. Defendants’ Position

This issue was never part of any discussion between the parties on the meet and confer, which took place six months ago. Given that, the issue was apparently not significant to Plaintiffs from the outset. However, Defendants have had no opportunity to consider this new issue since Plaintiffs provided only several days’ notice when they decided to bring this motion.

Regardless, there is no legitimate reason to invade the privacy of employees by requiring production of their “personnel files.” At most, a request that sought documents reflecting performance issues, discipline and/or employment termination related to safe deposit box theft for employees involved in the drilling or inventorying of the safe deposit box might be relevant, although U.S. Bank can safely state that no such documents exist.

**I. RFP 12**

1. Plaintiffs' Position

Insurance information is plainly discoverable. In fact, insurance agreements must be produced as part of a party's initial disclosures without even being asked. *See* Fed. R. Civ. P. 26(a)(1)(A)(iv). And "insurance documents that are not discoverable under Rule 26(a)(1)(D) remain discoverable under the relevancy standard of Rule 26(b)(1)." *Goodrich Corp. v. Emhart Indus.*, No. EDCV 04-00759-VAP (SSx), 2005 U.S. Dist. LEXIS 25160, at *15 (C.D. Cal. Oct. 6, 2005). Accordingly, Plaintiffs requested: "ALL policies or agreements or other arrangements for indemnity or insurance (including reinsurance) that could respond, cover, or otherwise pertain to this ACTION, and any relevant claims or other requests for indemnity submitted in connection with those policies / agreements." (Ex. A, RFP 12). In addition to verbose boilerplate objections, USBNA stated:

> Subject to and without waiving its objections, and subject to any future order staying discovery but in response to the Court's order requiring the parties to engage in discovery at this time, Responding Party is presently unaware of any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy a possible judgment.

Not only is the response (improperly) "[s]ubject to and without waiving" the litany of USBNA's boilerplate objections (*see, supra*, § II.A.1) Defendants have posed, but the response is explicitly limited to "insurance agreement[s]" with "an insurance business." Plaintiffs' request, however, is not so limited. From Bancorp's SEC filings, it appears that Bancorp has several affiliates, only a handful of which may be considered "insurance businesses." (Ex. G.) Plaintiffs specifically requested a broader category to determine if Bancorp, or any of its affiliated entities control, indemnify or otherwise fund and/or backstop, directly or indirectly, USBNA's operations, and particularly USBNA's operations as relevant to this case. (ECF 122 at 11:11-13:18.) Such information is relevant to the relationship between USBNA and Bancorp for the purposes of this case—an issue that is already hotly contested. (See, e.g., ECF 117 at 8:3-11, 9:13-10:24, 16:3-17:3.)

Defendants state below that Plaintiffs were unwilling to accept Defendants' "offer," but this misstates the discussion. Defendants agreed to amend their response (Ex. C at 7), and never did.

2. Defendants' Position

There is nothing improper about Defendants' responses to this question. It states unequivocally that Defendants are presently unaware of any such insurance and even offered to state that the response was not limited to insurance agreements with insurance businesses, but Plaintiffs would not accept that offer. There is no applicable insurance here. The response is appropriate and it is entirely unclear why Plaintiffs are moving on this request.

**J. RFPs 13-15, Rogs 11-13**

1. Plaintiffs' Position

As noted above, the relationship between USBNA and Bancorp is hotly contested in this case. (See, e.g., ECF 122 at 11:11-13:18; ECF 117 at 8:3-11, 9:13-10:24, 16:3-17:3.) Plaintiffs have also discussed this issue in the Parties' Joint Statement concerning Plaintiff' motion to compel Bancorp at § II.B.1.

Accordingly, Plaintiffs served discovery requests specifically targeting this issue, and requesting information about overlapping officers, directors, employees, office space, and resources, (RFPs 13, 14; Rogs 11-13), and communications with Bancorp employees concerning safe deposit boxes, customer property, or branch closures and consolidations (RFP 15). Given this hotly contested issue, Defendants' relevance objection is untenable. So too are the generic vague and ambiguous objections. And Defendants fail to produce any evidence regarding any purported burden. Thus, their burden objection cannot be sustained. *See Berger*, 2010 U.S. Dist. LEXIS 152830, at *5 ("It is well-established that the burden is on the objecting party to show grounds for failing to provide the requested discovery."). Further, even if the requests are burdensome, the "onus" is on Defendants to propose something narrower, which Defendants have refused to do. *See Owen*, 344 F.R.D. at 536. Accordingly, Defendants should be ordered to produce all documents responsive to Plaintiffs' requests.

2. Defendants' Position

These requests are wildly overreaching and the notion that the relationship between those entities is "hotly contested," is a pure fiction. The Fongs' relationship is with U.S. Bank and U.S. Bank is a defendant, present, participating, and here. The Fongs have presented ***zero evidence whatsoever*** to suggest that they had any relationship with U.S. Bancorp. They have simply sued U.S. Bancorp, the parent

Bank Holding Company created under the Bank Holding Company Act of 1956 for pure harassment in this simple case about a safe deposit box opened and maintained at U.S. Bank.

Even if this case were about complex corporate structures – and it is not in any way, shape or form – the discovery would be wildly overbroad. RFP 13 seeks a Roster of all YOUR officers and directors from January 1, 2019, to present who have any roles and/or responsibilities at U.S. BANK BANCORP and/or U.S. BANK OPERATIONS. RFP 14 seeks ALL DOCUMENTS sufficient to show shared employees, office space, or resources between U.S. BANCORP on the one hand, and U.S. BANK NA or U.S. BANK OPERATIONS on the other. And RFP 15 seeks ALL COMMUNICATIONS between or among any of U.S. BANCORP on the one hand, and U.S. BANK NA or U.S. BANK OPERATIONS on the other, regarding safe deposit boxes, customer property, or branch closures and consolidations. Each of these is objectionable on its face. The corporate inner workings of U.S. Bank and its parent are not in any way relevant to this case – Plaintiffs' decision to sue the parent company with no facts or even allegations to suggest they have a relationship with the parent is pure harassment.

The interrogatories fare no better. They demand responses of any officers, directors, or employees who have overlapping roles at U.S. Bank or its parent Bank Holding Company, U.S. Bancorp. Rog 12 requires a description of the relationship between the entities including a slue of reporting structures, oversight committees, shared officers, development and approval of policies, customer property, and branch closures and consolidations. And Rog 13 demands a description of the relationship between the Bank and its Bank Holding Company.

These requests cannot be served with a straight face or perhaps they are intended to convince the Court to "split the baby." Nothing about these requests is proper as they have nothing to do with the Fongs' safe deposit box at U.S. Bank. Even if these incredible swaths of documents were appropriate in this case (and they are not), many of the corporate documents are publicly available in regulatory filings or otherwise, but beyond this, there is no basis for seeking these in this case. The Fongs' relationship is with U.S. Bank, which has produced the contracts governing its relationship with the Fongs and their safe deposit box. To be sure, the Fongs haven't produced any documents or information during discovery to suggest otherwise. Their insistence on proceeding against the Bank Holding Company, which is a creature of statute created under the Bank Holding Company Act of 1956, is incredible. U.S. Bancorp's

interrogatory responses, verified by U.S. Bancorp Officer Elizabeth Maiser, state that "[a]s a registered bank holding company under the Bank Holding Company Act of 1956, U.S. Bancorp—unlike its subsidiary, U.S. Bank National Association—is not a bank, engages in no banking activities, and does not provide safe deposit box services to consumers. As such, U.S. Bancorp had no involvement with—and had no officers, directors or employees responsible for—the Fongs' safe deposit box, or any relevant events related to the drilling or allegedly missing property during the relevant time period." (ECF 93-1, Ex. 3 (Defendant U.S. Bancorp's Supplemental Objections and Responses to Plaintiff Peter Fong's Interrogatories, Set One ("Supp. Rog. Responses"), at 6:24-7:2 (pp. 39–40 of 183 of ECF 93-1).) It has no responsive documents – all documents related to the Fongs are in the possession, custody, and control of U.S. Bank – ***which, to the extent they are called for, relevant, and not objectionable, already has produced those documents and would be the party from whom the documents would be produced***. That Plaintiffs persist in this way when they have the actual party with the actual documents in front of them is a mystery.

**K. Rogs 14 & 15**

1. Plaintiff's Position

Interrogatories 14 and 15 request the profit Defendants derived from the business operating under the US Bank brand. USBNA refuses to produce any of the requested information claiming, among other things, that it is irrelevant, burdensome, and available in public filings. (Ex. B, Rogs 14 & 15.)

But "the request for financial information is relevant as this information is generally admissible at trial [when a plaintiff claims] punitive damages." *EEOC v. Cal. Psychiatric Transitions*, 258 F.R.D. 391, 394 (E.D. Cal. 2009). "[C]ourts often find a defendant's financial information relevant and proportionate to the issue of potential punitive damages, and that the majority of federal courts allow discovery into a defendant's financial condition without a prima facie showing that a plaintiff is entitled to punitive damages." *Mojica v. S.M. Healthcare, Inc.*, No. 2:24-cv-05276-CBM-MARx, 2025 LX 283854, at *9 (C.D. Cal. Jan. 31, 2025).

This information cannot be burdensome for a large, publicly traded corporation like Defendants to produce. They collect and review this type of information regularly to make their quarterly reports.

And while Defendants file public quarterly reports, that does not mean the profits from US Bank operations generally, or its safe deposit box operations specifically, are publicly reported. Plaintiffs have not been able to find it in Defendants' SEC reports. Plaintiffs have asked Defendants' counsel where it is (Ex. C at 23), and Defendants have not identified where it can be found.

The Court should order Defendants to produce the information and answer the interrogatories fully.

2. Defendants' Position

There can be no legitimate reason to ask for U.S. Bank's profits for any year, much less the last 26 years. Regardless, any regulatory filings are publicly available to anyone who wishes to look for them.

**L. RFP 16**

1. Plaintiffs' Position

In California federal courts, "[d]ocument retention policies are generally discoverable." *Velasco v. Mercedes-Benz USA, LLC*, No. 2:18-cv-07880-MWF (SKx), 2019 U.S. Dist. LEXIS 222387, at *4 (C.D. Cal. June 13, 2019). *See also Vargas v. United States,* No. 5:23-cv-00380-JWH-SPx, 2024 U.S. Dist. LEXIS 202513, at *12 (C.D. Cal. Nov. 6, 2024) ("USA is ordered to produce information concerning: . . . its document retention policies."); *Sharma v. BMW of N. Am. LLC*, No. 13-cv-02274-MMC (KAW), 2016 U.S. Dist. LEXIS 34101, at *10-11 (N.D. Cal. Mar. 15, 2016) ("The document retention policies may help Plaintiffs determine the universe of responsive documents and evaluate any gaps in document production. Requiring production of this information is also proportional to the needs of this case. BMW NA does not refute Plaintiffs' assertion that the document retention policies they seek are contained within a modest number of pages, and in light of this, the burden or expense of producing this information is likely minimal, while the benefit of such information would be substantial. Knowledge of BMW NA's document retention policies will allow Plaintiffs to assess the company's document production, determine whether any relevant documents are lacking, and evaluate whether additional discovery is necessary in this case. Furthermore, BMW NA's remaining objections are unavailing. None justifies withholding the information sought. Plaintiffs' request is not argumentative. Nor does it assume that documents have been destroyed pursuant to any document policy. As Plaintiffs explain, production of BMW NA's document retention policies would help establish the universe of documents that have been

preserved and are available."); *Berger,* 2010 U.S. Dist. LEXIS 152830, at *15 (C.D. Cal. Oct. 7, 2010) ("Defendant is ordered to produce to plaintiff all available nonprivileged information pertaining to its data retention policy (including any written litigation hold notices and memoranda). If defendant contends that any such documents are privileged, they must be specifically reflected on defendant's privilege log."). Accordingly, Plaintiffs requested: "YOUR document retention policies, including but not limited to the retention policy for video surveillance cameras in the USB SACRAMENTO BRANCH." (Ex. A, RFP 16)

Given the authority cited above that document retention policies are discoverable as a matter of course, even if there are no allegations that documents have been destroyed, all of Defendants' objections should be overruled.

Defendants' document retention policies are particularly relevant here because of Defendants' claim that relevant surveillance videos are missing. Defendants' February 16, 2022, letter to Plaintiffs noted that Defendants drilled into Plaintiffs' box on November 18, and invited Plaintiffs to request a copy of the surveillance videos. (ECF 17-2.) Yet in this litigation, USB's prior counsel suggested in 2023 that the videos no longer exist due to Defendants' 90-day document retention policies. (Ex. E.) Thus, Exhibit E is important for two reasons: (1) it shows that Defendants did not consider their document retention policies to be privileged (and even if they were privileged, the privilege is now waived); and (2) if Defendants' document retention policy was 90 days, those videos should have been preserved because (coincidentally or not), Defendants' February 16 letter was sent exactly 90 days from the day Defendants drilled into Plaintiffs' box.

2. Defendants' Position

First, Defendants have never, ever taken the position that "relevant surveillance videos are missing" as Plaintiffs state. Defendants have explained over and over again that there are no relevant surveillance videos because there were not cameras in the areas where the events at issue took place (that is, the drilling and inventorying of the safe deposit box contents).

Second, putting that aside, discovery on document retention is not appropriate and Plaintiffs' cases are not analogous. We've reviewed the cases cited by Plaintiffs, but they are not binding and are not analogous to our case. Courts in the Ninth Circuit have gone the other way in situations more like ours. For example, in *Medal v. Amazon.com Servs., LLC*, the court granted a protective order as to discovery

into Amazon's document storage and retention systems. 2025 WL 1656117, at *4 (W.D. Wash. June 11, 2025) (collecting cases). The court emphasized that such discovery-on-discovery was inappropriate and irrelevant where the case was in the early stages of discovery; there were no allegations of spoliation; no documents had been destroyed or withheld as unavailable in accordance with a document retention policy; and the requesting party sought broad, generalized retention information. *Id.* at *4. Those points all apply here. *Medal* also distinguished from cases such as *Sharma v. BMW of N. Am., LLC,* explaining that Sharma involved specifically identified retention policies sought at the close of discovery, after spoliation concerns had arisen. *Medal*, 2025 WL 1656117, at *5. None of those circumstances are present here.

Other courts similarly reject requests for document retention policies absent evidence of spoliation or discovery misconduct. *See, e.g.*, *Mendis v. BMW of N. Am. LLC*, 2025 WL 1666288, at *3 (W.D. Wash. June 12, 2025) (denying motion to compel: "Plaintiff requested Defendant's document retention policies and Defendant objected to 'discovery on discovery.' [Cite] Plaintiff argued that because certain evidence, such as Mr. Tatro's email, had not been produced, he needed to review Defendant's document retention policies. The Court ruled that Plaintiff was not entitled to the document retention policy because there was no evidence that Defendant engaged in intentional destruction of evidence."); *In re USA Com. Mortg. Co.*, 2010 WL 11538037, at *10 (D. Nev. June 9, 2010) (denying motion to compel retention policies: "[T]he revelation of document retention policies is not likely to lead to evidence relevant to the underlying case, but only to evidence relevant to discovery disputes. The underlying case is not about retention of documents.").

As noted above, we have repeatedly explained that there was no video surveillance of the drilling or inventorying of the Fongs' safe deposit box, and therefore no video subject to retention. The Bank's retention policies are thus wholly irrelevant as a result.

Respectfully submitted,

Dated: September 22, 2026

CALABRO | LAW OFFICE

By: */s/ J. Toji Calabro*
J. Toji Calabro
Attorney for Plaintiffs

Dated: September 22, 2026

GREENBERG TRAURIG, LLP

By: */s/ Karin L. Bohmholdt*

Karin L. Bohmholdt
Michael M. Krauss
Sam Payne
Attorneys for Defendants